AMOCO OVERSEAS OIL CO.,
Plaintiff-Appellee,

v.

COMPAGNIE NATIONALE ALGERI-ENNE DE NAVIGATION ("C. N. A. N.") and T/S IN AMENAS, her engines, boilers, tackle, etc., and the freights of T/S In Amenas, Defendant-Appellant.

AMOCO TRANSPORT COMPANY and Amoco Overseas Oil Company,
Plaintiffs-Appellees,

v.

COMPAGNIE NATIONALE ALGERI-ENNE DE NAVIGATION ("C. N. A. N."), Defendant-Appellant.

No. 1020, Docket 79–7135.

United States Court of Appeals,
Second Circuit.

Argued May 22, 1979.
Decided July 19, 1979.

Philip V. Moyles, New York City (Robert L. Mahar, John J. Walsh and Freehill, Hogan & Mahar, New York City, of counsel), for defendant-appellant.

Joseph T. Stearns, New York City (Richard A. Corwin and Walker & Corso, New York City, of counsel), for plaintiffs-appellees.

Before LUMBARD, MANSFIELD and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal from an order of the District Court for the Southern District of New York (Hon. Charles H. Tenney, Judge) refusing appellant's motion under F.R. Civ.P. 60(b) to reopen a previous default judgment entered on behalf of appellees. *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne,* 459 F.Supp. 1242 (S.D. N.Y. 1978). Appellant broadly argues that there was no jurisdiction to enter the original default judgment and that in any event the District Judge should have set the judgment aside.

This case is a procedural "comedy of errors." In the summer of 1976 appellant Compagnie Nationale Algerienne de Navigation ("C.N.A.N.") entered into a contract of Tanker Voyage Charter Party with appellee Amoco Transport Company ("Transport") for the carriage of a large quantity of crude oil from Egypt to a port outside the United States. The contract was negotiated between C.N.A.N.'s broker in France and Transport's broker, Poten & Partners, Inc. ("Poten"), in New York. The oil was shipped by Amoco Egypt Oil Company and was to be delivered to appellee Amoco Overseas Oil Company ("Overseas").

Delivery was ultimately made in Curacao, Netherlands Antilles. Some time after the oil was discharged, and after the freight payments had been deposited with Poten in New York for remittance to C.N.A.N., appellees discovered that the full quantity of oil due had not actually been delivered. They commenced this action quasi in rem on August 20, 1976 by obtaining an order of attachment against funds credited to C.N. A.N. in Poten's account at the First National City Bank in New York City.

The attachment was effected under state law, N.Y.C.P.L.R. §§ 6201 *et seq.*, pursuant to F.R.Civ.P. Supplemental Rule B (for certain admiralty and maritime claims). By inadvertence, appellees did not also utilize the federal procedure which may be employed "in addition" under Rule B(1). Accordingly, it was incumbent upon them to perfect their state quasi in rem jurisdictional base by complying with New York statutory requirements. § 6214. Among these is the requirement that within 90 days after the order of attachment is levied upon the property it must actually be taken into custody by the sheriff (if tangible) or the plaintiff must commence a special proceeding against the garnishee. § 6214(c), (d) & (e). Otherwise, the levy becomes void. § 6214(e). The 90-day period here started to run on August 20.

Appellees failed to have the funds taken into custody or to commence a special proceeding during the 90-day period. On Octo-

ber 21, 1976, before the 90-day period had expired, however, the District Court entered a default judgment for inquest, finding that appellant was in default and assigning assessment of damages to a magistrate. On March 21, 1977, unaware that the levy upon the funds had lapsed, the District Court adopted the magistrate's findings and two days later entered final judgment for $378,977.33 against appellant.

When appellees sought to execute this judgment, the Bank refused to surrender the funds because the levy had become void. Appellees hastened back to court to reattach the funds both under Admiralty Rule B and by seeking *ex parte* an "extension nunc pro tunc" of the time period during which to perfect the original attachment. The extension nunc pro tunc was granted on March 31, 1977, and on April 1, 1977, an amended default judgment was entered. Though it is quite clear that C.N.A.N. had actual notice of the action before Judge Tenney, it did not respond or appear in any way.[1] Having ignored the United States court during the proceedings and for approximately a year after final judgment, appellant finally made its first appearance.

On April 1, *1978*, appellant made a motion in the District Court seeking relief from the default judgment under F.R.Civ.P. 60(b);

inasmuch as April 1 was a Saturday, the motion was not actually docketed until April 3, more than a year after final judgment.

Appellant attacked the jurisdiction of the court to enter the judgment on several grounds, asserting that (1) under state law jurisdiction under the void attachment could not be restored by an order nunc pro tunc; (2) restoration of the levy was in any event barred after January 1977 when the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.*, came into effect; and (3) quasi in rem jurisdiction in this case was a violation of due process. Appellant further urged that the default should be set aside under Rule 60(b)(1) for mistake, inadvertence and excusable neglect, or, alternatively, under 60(b)(6) for "just" reasons.

Judge Tenney rejected the jurisdictional challenges, ruling that (1) state law permitted a nunc pro tunc restoration of the levy; (2) the Immunities Act did not apply because jurisdiction over appellant was originally asserted before the Act came into effect; and (3) the jurisdiction quasi in rem was governed by traditional admiralty principles and was not, in any event, within the scope of the Supreme Court's recent decision in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), concern-

---

1. Among the efforts to serve notice upon C.N.A.N. in these proceedings were the following:

(1) On August 23, 1976, three days after the order of attachment, notice of motion for leave to prove grounds upon which the order of attachment was issued was served by ordinary mail on C.N.A.N. in Algeria and c/o the Algerian Embassy in Washington, D. C.

(2) On August 26, 1976, notice of motion was served again by registered mail to C.N.A.N. in Algeria and by certified mail to the Algerian Embassy, the First National City Bank and the U.S. Marshal.

(3) On August 27, 1976, the ex parte order changing the return date on the motion was served by registered mail to C.N.A.N. in Algeria and by certified mail to the Algerian Embassy.

(4) On September 9, 1976, the summons and complaint were served by certified mail on the Algerian Embassy.

(5) On September 10, 1976, an affidavit in support of the motion was served by certified mail on the Algerian Embassy and by registered mail on C.N.A.N. in Algeria.

(6) On September 13, 1976, the Order of Attachment was served by certified mail on the Algerian Embassy and by registered mail on C.N.A.N. in Algeria.

(7) On September 14, 1976, the summons and complaint were served by registered mail on C.N.A.N. in Algeria.

(8) On October 15, 1976, an ex parte order amending the caption was served by registered mail on the Algerian Embassy and on C.N.A.N. in Algeria.

(9) On November 9, 1976, the default judgment for inquest was served by certified mail on the Algerian Embassy and by registered mail on C.N.A.N. in Algeria.

(10) On March 5, 1977, the magistrate's report on damages was served by registered mail on C.N.A.N. in Algeria.

(11) On March 7, 1977, the magistrate's report was served by certified mail on the Algerian Embassy.

In addition to the foregoing, C.N.A.N. doubtless had actual notice that remittance of the freight payments had been held up by court action.

ing due process limitations on quasi in rem jurisdiction. The District Judge also held that the motion to set aside under Rule 60(b)(1) was untimely and that extraordinary relief under Rule 60(b)(6) was unwarranted. From this decision, C.N.A.N. appeals.

I

█ Authority under New York law for a judicial extension of the period of time in which a levy of attachment may be perfected is found in N.Y.C.P.L.R. § 6214(e). That section's predecessor under the old Civil Practice Act was § 922, which provided that an extension of the 90-day period could be had upon an application to the court *prior* to the expiration of the 90 days. *See Carroll v. Manufacturers Trust Co.,* 202 F.2d 714, 715 (2d Cir. 1953) (per curiam); *Nemeroff v. National City Bank,* 262 App.Div. 145, 146–47, 28 N.Y.S.2d 295 (1st Dept. 1941). If § 922 were still in force, it would have been error in this case for the District Court to extend the 90-day period of the levy after it had expired.

When C.P.L.R. § 6214(e) superseded § 922, however, the wording of the extension provision was significantly altered. Unlike § 922, § 6214(e) does not specify that an extension of the 90-day term of the levy must be ordered *prior* to the close of that period. The new subsection "is worded broadly enough . . . to permit a court to grant an extension after the levy becomes void as long as any rights in the property or debt acquired by a third person are protected." 7A Weinstein, Korn & Miller, New York Civil Practice § 6214.15, at 62–140; *accord* McLaughlin, Supplementary Practice Commentaries, 7B McKinney's Consolidated Laws of New York, 1964–1978 Supplementary Pamphlet CPLR 6001–7700, at 61 ("This result is commendable, so long as there are no intervening lienors.").

█ Two New York courts have taken this change in the statutory wording to hold that the levy period may be extended even after the levy has become void. *Seider v. Roth,* 28 A.D.2d 698, 280 N.Y.S.2d 1005 (2d Dep't 1967); *Cenkner v. Shafer,* 61 Misc.2d 807, 306 N.Y.S.2d 634 (Sup.Ct.1970) (dictum). *Contra, Worldwide Carriers, Ltd. v. Aris Steamship Co.;* 312 F.Supp. 172, 175 n.5, 177 (S.D.N.Y.1970).[2] Appellant attempts to distinguish *Seider* and *Cenkner* on the ground that they involved attachment of insurance policies, pointing out that the *Seider* Court remarked that "[t]his is a proper case for the grant of extension of time . . . in view of the novelty of the question, the uncertain state of the law *and the fact that the requirement of CPLR 6214 is largely ministerial as it relates to intangible property.*" (Emphasis added.) 28 A.D.2d at 699, 280 N.Y.S.2d at 1007. Without inquiry into whether the credit balance attached is an "intangible," we note that the Appellate Division did not hold that the court, in case of a tangible, would be without *power* to grant the extension after 90 days, but rather that the ease of administering an attachment of intangibles was a factor for the consideration of the court. Certainly § 6214(e) itself makes no distinction between tangible and intangible property with respect to extensions of the levy period.

█ Appellant also argues that permitting post-90-day extensions of the levy period will reduce the 90-day time limit on levies to insignificance. We disagree. The fact that courts have the power to extend the period after 90 days have passed does not mean that extensions will always be granted. Moreover, the 90-day period retains significance with respect to the rights of third parties. Weinstein, Korn & Miller, *supra,* at 62–140; McLaughlin, Supplementary Practice Commentaries, *supra,* at 61.

2. We decline to adopt the position taken by the court in *Worldwide Carriers,* noting that "[t]he cases relied upon . . . [in that decision] were decided under the prior statute [§ 922] which . . . explicitly required the motion to be made during that [90-day] period." *See National American Corp. v. Federal Rep. of Nigeria,* 448 F.Supp. 622, 634 & n.20 (S.D.N.Y. 1978).

Nor is appellant in a position to complain that the extension of time here was unfair. Had appellees originally also attached under Admiralty Rule B, as they would have done absent a clerical oversight, jurisdictional attachment would not have required physical possession of the *res* within *any* specified period. In the context of this admiralty case, therefore, the lapse of the levy is not significant in terms of appellant's substantial rights. There is no real prejudice to appellant in retroactive extension of the period in which the appellees' levy may be perfected.[3]

## II

Appellant next contends that even if a retroactive extension of the perfectibility period is now permissible under state law, that extension was, nevertheless, forbidden because the Foreign Sovereign Immunities Act, which bars jurisdictional attachment of the property of a foreign sovereign, 28 U.S.C. §§ 1609 & 1610, came into effect on January 19, 1977, before appellees were granted the nunc pro tunc extension order.[4] It is conceded that appellant is the instrumentality of a foreign sovereign—the Democratic & Popular Government of Algeria—and that C.N.A.N.'s property is therefore the property of that foreign sovereign.

The Act, § 1609, makes the property of a foreign state immune from attachment *after* the effective date of the Act.

The attachment here was *before* the effective date of the Act. The argument is made, however, that the attachment became void by the failure to perfect the levy within ninety days, and that when the nunc pro tunc order was entered by Judge Tenney, the Act had already become effective. We think that the argument mistakes the levy for the order of attachment. The levy may have become void, or as we have seen, voidable subject to reinstatement under State law, but the order granting the attachment was never itself rendered void. It subsisted so that a new levy, the means of executing the continuing valid order, could be made under it. *Freedom Discount Corp. v. Clune,* 32 A.D.2d 833, 834, 302 N.Y.S.2d 465 (2d Dep't 1969); *And see National American Corp. v. Federal Republic of Nigeria,* 448 F.Supp. 622, 634 (S.D.N.Y. 1978). Since the order to attach was made before the effective date of the Act, as we construe the Congressional intention, it was not yet subject to the Act. Indeed, but for the fortuitous failure to complete attachment under Admiralty Rule B, there would be no question that attachment was effected well before the Immunities Act came into play.

Appellant argues that the decision of Judge Tenney in *Yessenin-Volpin v. Novosti Press Agency,* 443 F.Supp. 849 (S.D.N.Y. 1978), is in its favor. That case did not involve retroactive application of the Act to

---

3. Appellant briefly raises the argument that even if there is power under § 6214(e) to extend the period for perfection of the levy after it has expired, the court erred because under that subsection such an extension must be effected by motion or order to show cause with notice to all parties. Here the extension was accomplished by ex parte application.

   The difficulty with this contention is that the requirement of notice to all parties was only explicitly added to the provision as of September 1977, after the extension in this case was granted. 1977 N.Y.Laws c. 860, § 6. Previously § 922 provided for extensions on ex parte application.

   Appellant's reply brief (at 13–14) may be read as raising a due process objection to the ex parte nature of the extension order. We decline to address that claim if, indeed, it be raised, inasmuch as the due process issue was raised neither below nor in appellant's opening

brief. F.R.A.P. 28(a)(2); *see Mississippi River Corp. v. FTC,* 454 F.2d 1083, 1093 (8th Cir. 1972) (issue cannot normally be raised by reply brief); *compare Consumers Union v. FPC,* 166 U.S.App.D.C. 276, 282, 510 F.2d 656, 662 & nn.9 & 10 (1975) (per curiam on denial of rehearing).

4. In its opening brief appellant briefly adverts to the claim that the Immunities Act confers sovereign immunity wholly apart from the bar to attachment, thus depriving the courts of jurisdiction. Even if we deem this brief statement sufficient to raise the question on appeal, *see* note 3, *supra,* it may be treated in tandem with our consideration of the claim of immunity from attachment, since our resolution of the latter turns on whether the Immunities Act should be applied to the action against C.N. A.N.

quasi in rem attachment proceedings which had already begun. To the extent that the judge in that case relied upon the preamble to the Act which states that "[c]laims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter," § 1602, we would not follow the interpretation that "henceforth" means from the date of *enactment* of the Act, because Sections 1609 and 1610 which deal with attachment, use the phrase "after the effective date of [the] act." Moreover, applying the Immunities Act to prevent retroactive perfection of the levy will prejudice very substantial antecedent rights of the appellees, since they had obtained a default judgment for inquest while the levy was in force and well before the effective date of the Act. We do not believe that it was the "manifest intention of the legislature," *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964), quoting *Union Pac. R. Co. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 58 L.Ed. 179 (1913), to apply the Immunities Act in such a case.[5]

As a matter of fact, Congress did not intend to make the foreign state immune in suits in admiralty to enforce a maritime lien against a vessel or cargo of the foreign state when the maritime lien is based upon a commercial activity of the foreign state. 28 U.S.C. § 1605(b). Though here both vessel and cargo were clearly engaged in commercial activity, they were not within our territorial jurisdiction. The very exception for this type of admiralty claim, however, fortifies our conclusion with respect to Congressional intent. The attachment here

was of the freights which stood in place of the cargo.[6] The property ordered to be attached was not here fortuitously. It had a direct nexus to the litigation over the shortage of oil. Hence, the result we reach does not run contrary to the spirit of the Immunities Act.

## III

Appellant's final challenge to the jurisdiction of the court below is based upon the due process clause as it restricts the assertion of personal jurisdiction through proceedings by attachment. Because jurisdiction over appellant here is quasi in rem, appellant argues that it is invalid under the Supreme Court's recent decision in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

*Shaffer* completed the process of supplanting the old doctrine of personal jurisdiction based upon state sovereignty with a newer theory of personal jurisdiction stemming from notions of due process. *See id.* at 196–206, 97 S.Ct. 2569; *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under the regime of *Shaffer,* the test of "'fair play and substantial justice'" that governs in personam jurisdiction controls in rem jurisdiction as well. *Shaffer, supra,* 433 U.S. at 207, 97 S.Ct. 2569, 2582. But this extension of the "fair play" test to the ostensible exercise of jurisdiction over property is not necessarily incompatible with the principle of jurisdiction quasi in rem because "the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the de-

---

**5.** For the same reason, appellant can draw little comfort from the decision in *National American Corp. v. Federal Republic of Nigeria, supra,* 638–39, in which the court retroactively applied a provision of the Immunities Act that created a new basis for asserting in personam jurisdiction over a foreign defendant. There, retrospective application *expanded* jurisdiction and did not interfere with antecedent rights.

**6.** Since traditionally "if a maritime lien attaches to a vessel it also attaches to its freights, which are incident to the 'vessel'", *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.,*

306 F.2d 188, 192 (9th Cir. 1962) (interpreting "vessel" under the Maritime Lien Act, 46 U.S.C. §§ 971–975) *and cf. Gray v. Freights of THE KATE,* 63 F. 707, 713 (S.D.N.Y.1894) (Brown, J.), it might be argued that the general exception to the jurisdictional immunity of a foreign state in § 1605(b) of the Immunities Act which permits enforcement against a "vessel or cargo" would also include freights substituted for the cargo. But the point was not argued and we leave the answer for another day. The analogy is strong, at least, in assessing Congressional intent.

fendant, and the litigation." *Id.* The real "teaching of *Shaffer* is that courts must look at realities and not be led astray by fictions." *O'Connor v. Lee-Hy Paving Corp.,* 579 F.2d 194, 200 (2d Cir.), *cert. denied,* 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978).

Analyzing *Shaffer* from that standpoint several distinguishing aspects of the instant case become evident. First, and most notable, is the fact that here, unlike *Shaffer,* the property attached is related to the matter in controversy. *See Shaffer, supra,* 433 U.S. at 207–09, 97 S.Ct. 2569. Far from being present in New York adventitiously, *compare Harris v. Balk,* 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905); *O'Connor, supra,* at 198, the freights that were attached were in Poten's accounts in New York pursuant to the Charter Party. Had there been some default in the payment of the freights therefore, C.N.A.N. might well have availed itself of the opportunity to sue Poten, whom it designated to receive the freights, in New York, and possibly also Poten's principal, Amoco Transport. *See Engineering Equipment Co., v. S. S. SELENE,* 446 F.Supp. 706, 710 (S.D.N.Y.1978).

Second, *Shaffer* involved an attempt by one domestic state to assert jurisdiction over defendants who, it appears, could have been sued in at least one other state in the United States. 433 U.S. at 190, 211 n.37, 97 S.Ct. 2569. Here, on the other hand, the jurisdictional issue is whether appellant may be sued in the United States at all. We have no way of knowing whether appellant would be amenable to suit elsewhere in the world. Thus, there are elements of "jurisdiction by necessity" in this case. *See* Comment, Supreme Court, 1976 Term, 91 Harv.L.Rev. 70, 162 (1977).

■ Third, *Shaffer* did not consider assertion of jurisdiction over property in the admiralty context.[7] Because the perpetrators of maritime injury are likely to be peripatetic, *Ex Parte Louisville Underwriters,* 134 U.S. 488, 493, 10 S.Ct. 587, 33 L.Ed. 991 (1890), and since the constitutional power of the federal courts is separately derived in admiralty, U.S. Constitution Art. III § 2, suits under admiralty jurisdiction involve separate policies to some extent. This tradition suggests not only that jurisdiction by attachment of property should be accorded special deference in the admiralty context, but also that maritime actors must reasonably expect to be sued where their property may be found.

■ Bearing these considerations in mind, we believe that the presence of the freights in New York, sent to New York with the agreement of appellant, is a sufficient basis for personal jurisdiction under the due process standard of *Shaffer v. Heitner.* Our conviction that it is fair to assert jurisdiction here is strengthened by the fact that the parties to the Charter also specified that arbitration was to take place in New York. The existence of such an agreement carries considerable weight in demonstrating that it is not unfair to require the parties to litigate in the forum in which arbitration was designated to take place. *Compare Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos,* 553 F.2d 842 (2d Cir. 1977). *And cf. Intermeat, Inc. v. American Poultry, Inc.,* 575 F.2d 1017 (2d Cir. 1978).

### IV

Finally, appellant urges that even if there was jurisdiction to enter this default judgment it should be set aside under Rule 60(b)(1) or Rule 60(b)(6).

---

7. At least one district court in another jurisdiction has held that *Shaffer* does not affect jurisdiction obtained under Admiralty Rule B attachment, *Grand Bahama Petroleum Co., Ltd. v. Canadian Transportation Agencies, Ltd.,* 450 F.Supp. 447 (W.D.Wash.1978), although that court was careful to note that it was not considering "states remedies provided via Rule B(1)" as in this case, id. at 455 n.50. We need not consider whether *Grand Bahama Petroleum* was correctly decided, or whether it should be applied part and parcel to "states remedies provided via Rule B(1)"; even if the *Shaffer* rule of "minimum contacts"/"fair play" applies in the realm of jurisdiction by attachment in admiralty, *see, e. g., Engineering Equipment Co., supra,* that application must be understood in the light of the special history and circumstances of that unique body of law. *Cf. Grand Bahama Petroleum, supra.*

Rule 60(b)(1) permits a district court to relieve a litigant from a judgment because of "mistake, inadvertence, surprise, or excusable neglect." Motions under subsection (b)(1), however, must "be made within a reasonable time, and . . . not more than one year after the judgment . ..." Since the final judgment in the original proceeding against C.N.A.N. was entered on April 1, 1977 and the Rule 60 motion filed by appellant was not actually docketed until April 3, 1978, Judge Tenney held below that the motion was not timely filed because it was submitted more than one year after the judgment. 450 F.Supp. at 1249; App. 322.

Appellant contends that this ruling was erroneous because the motion was actually delivered to the District Court on April 1, 1978—exactly one year after final judgment—but was not entered on the docket sheet until April 3 because April 1 was a Saturday. This contention is buttressed by F.R.Civ.P. 6, which provides that when the time period for filing expires on a Saturday, the following Monday should be treated as the last day.

Although Judge Tenney was incorrect in his determination that the Rule 60(b)(1) motion was filed over a year after judgment, his ultimate holding that the motion was untimely can be founded upon the alternative requirement that motions under the Rule be made within "a reasonable time." Although the fact that a motion was made barely within the one-year time limit gives the court the *power* to entertain it, as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was "reasonable." The District Judge indicated in his consideration of appellant's Rule 60(b)(6) motion that the delay might well not have been reasonable. 459 F.Supp. at 1250. Appellant's briefs offer no explanation to support its substantial delay in attempting to reopen the default judgment. Under these circumstances, it is difficult to see why a delay that falls within the absolute one-year bar by a hairsbreadth should necessarily be considered reasonable, at least where a 60(b)(1) motion is concerned.

To prevail on its alternative motion under Rule 60(b)(6), which has no specific time limit, the appellant had to demonstrate that there are extraordinary circumstances or extreme hardship that warrant relief from the judgment. *United States v. Cirami,* 563 F.2d 26, 32 (2d Cir. 1977).[8]

Judge Tenney carefully considered whether appellant's circumstances met the standards of Rule 60(b)(6) relief and concluded that they did not, relying primarily upon appellant's "failure to assert anything but a sketchy and desultory defense on the merits of the underlying action . . . ." 459 F.Supp. at 1250. That conclusion is supported by the long delay in mounting this attack on the judgment, which has seriously weakened appellees' case by making it less likely that they will be able to recover documents and records that show a shortfall in the oil delivered. In a case like this, delay can mean defeat. We cannot say that the District Judge's decision against affording Rule 60(b)(6) relief was an abuse of discretion, *see* 11 Wright & Miller, Federal Practice & Procedure § 2872 (1973).

The judgment appealed from is affirmed.

MANSFIELD, Circuit Judge (concurring):

I concur in Judge Gurfein's carefully considered and well reasoned opinion except for that part of Section I which would revive the court's *quasi in rem* jurisdiction by construing N.Y.C.P.L.R. § 6214(e) to permit a *nunc pro tunc* extension of a levy that had become void because of failure to take custody of the funds in the Poten account. The court normally loses jurisdiction when it loses control over the res. In my view

---

8. To the extent that these circumstances would also meet the test of mistake, inadvertence, surprise or neglect applicable under Rule 60(b)(1), they may not also serve as a predicate for (b)(6) relief, however. *Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266, *judgment modified,* 336 U.S. 949, 69 S.Ct. 877, 93 L.Ed. 1105 (1949); *Cirami, supra,* at 32.

the retroactive resurrection of lost jurisdiction through a *nunc pro tunc* fiction would nullify the purpose and effect of § 6214(e)'s ninety-day provision.

However, I am persuaded that the levy in the present case was continuously effective, even though the marshal had not reduced the funds to actual possession, because it appears that following the levy the garnishee had set aside or at least frozen the account pending further notice from the marshal, thus giving the marshal what amounts to constructive possession. *See Fantasy Records, Inc. v. Travelers Indemnity Co.,* 54 Misc.2d 799, 283 N.Y.S.2d 473, 475 (N.Y.Cty.1967); *National American Corp., supra,* 448 F.Supp. 622, 634 (S.D.N.Y.1978). Moreover, I am further persuaded, for the reasons stated by Judge Gurfein, that even if the levy had lapsed, this should not be of jurisdictional significance in an admiralty case as long as physical possession of the res is ultimately acquired.