AMOCO OVERSEAS OIL COMPANY,
Plaintiff,

v.

COMPAGNIE NATIONALE ALGERI-
ENNE de NAVIGATION ("C.N.A.N.")
and T/S IN AMENAS, her engines, boil-
ers, tackle, etc., and the Freights of T/S
IN AMENAS, Defendants.

AMOCO TRANSPORT COMPANY and
Amoco Overseas Oil Company,
Plaintiffs,

v.

COMPAGNIE NATIONALE ALGERI-
ENNE de NAVIGATION ("C.N.A.
N."), Defendant.

No. 76 Civ. 3714 (CHT).

United States District Court,
S. D. New York.

Sept. 27, 1978.

Walker & Corsa, New York City, for plaintiffs; Joseph T. Stearns, New York City, of counsel.

Freehill, Hogan & Mahar, New York City, for defendants; Robert L. Mahar, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

The Delaware corporate plaintiffs commenced an action in August 1976 against an agency of the Democratic and Popular Republic of Algeria and a vessel owned by that foreign state; a default judgment was entered against the defendants on April 1, 1977. The defendants have now moved pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure ("Rules") to set aside this judgment on the joint and several grounds that its original entry was void for want of jurisdiction and/or that mistake, inadvertence and excusable neglect entitle the defendants to relief. For the following reasons, the motion to set aside the default judgment is denied.

An intricate set of circumstances surrounds the entry of the default judgment, and in the equally complex arguments proffered to set it aside the defendants implicate, *inter alia,* the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602 *et seq.* ("Immunities Act"), and the recent jurisdictional upheaval occasioned by the Supreme Court decision in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The pertinent facts are these: Plaintiff Amoco Overseas Oil Company owned a large shipment of crude oil that was loaded aboard the defendant vessel in Egypt for discharge in Curacao, Netherlands West Indies. The vessel was under charter to plaintiff Amoco Transport Company. Delivery at Curacao was purportedly 34,094 net barrels short, something not immediately realized by the plaintiffs who had already deposited with their own broker for remittance to the shipowner a freight payment based on the presumptively complete discharge of the cargo. When the plaintiffs became aware of the shortage, they sought to recover the value of the missing cargo and of unearned freight, commencing suit quasi in rem by attachment of the very funds they had deposited to the credit of the shipowner.

The attachment was pursued through N.Y.C.P.L.R. §§ 6201 *et seq.* This procedure is sanctioned by Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Admiralty Rules"), which provides an independent, federal means of attachment of property for jurisdictional purposes or permits "[i]n addition, or in the alternative" the use of state law procedures to commence maritime actions quasi in rem. Apparently the plaintiffs initially failed to perfect their state quasi in rem jurisdictional base: ninety days after the service of the order of attachment—November 19, 1976—the levied-upon funds had not yet been taken into the possession of the Marshal. This put the plaintiffs athwart of N.Y.C.P.L.R. § 6214(e), which voids an unexecuted attachment after passage of that period of time or "at the expiration . . . of such further time as the court, upon motion of the plaintiff on notice to the parties to the action, has provided." Before the ninety-day period had lapsed, however, this Court had entered a default judgment for inquest declaring the defendants in default and referring the matter to a United States Magistrate for

assessment of plaintiffs' damages. On March 21, 1977, unaware that quasi in rem jurisdiction was unperfected and that the attachment had become void, the Court adopted the findings of the Magistrate. Two days later judgment was entered against the defendants in the total amount of $390,229.25.

The plaintiffs realized their dilemma when they attempted to execute the Court's judgment, for it was then that the garnishee, aware that the crucial ninety-day period had gone by, refused to release the funds. Plaintiffs immediately reattached pursuant to Admiralty Rule B and simultaneously returned to this Court to request an "extension nunc pro tunc" to perfect the original state law attachment. Believing that N.Y.C.P.L.R. § 6214(e) sanctions such procedure, this Court entered the requested Order on March 31, 1977. The Court was moved to its decision because Admiralty Rule B does not itself require reducing the res to possession as a condition to perfection of the jurisdictional attachment, because the plaintiffs could have relied solely on Admiralty Rule B to initiate this action, and because the plaintiffs represented to the Court that they had intended to use both state and federal procedure (which is permissible), believed in good faith that Admiralty Rule B attachment had been accomplished, and had complied absolutely with Admiralty Rule B(2) notice policies by fully and properly apprising defendants of all proceedings. Affidavit of LeRoy S. Corsa, sworn to March 30, 1977, ¶¶ 4, 7. On April 1, 1977, an amended default judgment was entered against the defendants in the same amount as the March 23, 1977, judgment.

On April 3, 1978, one year and two days after the last juridical act in this procedural circus, the instant motion to vacate the default judgment was filed by the defendants. They have raised several interrelated arguments, which should be numbered and parsed for clarity. Defendants assert:

1) that the final default judgment of this Court entered on April 1, 1977, was void because plaintiffs did not request within a "reasonable time" the nunc pro tunc extension to perfect the state attachment, that in any event no such extension would be permitted by section 6214(e), and that the lapse had the effect of voiding all proceedings had under the attachment;

2) that the default judgment was void even assuming arguendo that the Court could grant an extension of time in which to perfect attachment because, on January 19, 1977, in the period between lapse and nunc pro tunc order, the Immunities Act became effective, and sections 1609 and 1610 thereof barred the "revival" of this attachment;

3) that plaintiffs' issuance of process of maritime attachment pursuant to Admiralty Rule B on March 28, 1978, was a nullity because it directly contravened the newly effective Immunities Act subsection 1610(d)(2), which forbids attachment to obtain jurisdiction over foreign states, their agencies or instrumentalities; and

4) that defendants should be relieved of this judgment for reasons of mistake, inadvertence and excusable neglect, Rule 60(b)(1), for other "just" reasons, Rule 60(b)(6), and because they have a good and meritorious defense against plaintiffs' claim.

■ The plaintiffs maintain that their original state attachment was validly perfected by the nunc pro tunc order of March 31, 1977, that the only judgment of significance is the original default judgment for inquest entered by this Court during the ninety-day period when the state attachment was unquestionably valid,[1] that de-

---

1. The plaintiffs are mistaken in this contention. Rule 60(b) is directed, *inter alia,* at a "final judgment," and it is clear that the "essence of a final judgment is that it leaves for the court nothing to do but order execution." *International Controls Corp. v. Vesco,* 535 F.2d 742, 748 (2d Cir. 1976). Because damages had not yet been established in this action on October 27, 1976, the default judgment for inquest entered on that date was not "final"; that adjective is reserved for the April 1, 1977, amended default judgment in a sum certain. *See* note 7, *infra.*

fendants are time-barred under Rule 60(b) on various theories of vacatur that they propound, that the merits of the dispute demand that the judgment stand, and, finally, that there was in personam jurisdiction in this Court all the while. The validity and complexity of all arguments aside, the Court believes that it retained proper jurisdiction to enter its final judgment on April 1, 1977, that the Immunities Act did not interfere with that jurisdiction, and that there is no just reason for opening the default.

### Effect of the Nunc Pro Tunc Order of March 31, 1978

■■■■ The use of state attachment procedures for commencement of law, equity and maritime actions is specifically sanctioned in federal procedure by Rule 64 and by Admiralty Rule B. In either case "the availability of [attachment] will be determined by the current law of the state." 7 *Moore's Federal Practice* ¶ 64.07[2], at 64–28 (2d ed. 1978). "[S]tate law, *existing at the time the remedy is sought,* determines whether . . . an action by the marshal to reduce attached property to possession is necessary and the time within which it must be brought." *Id.* at 64–28 & –29

2. In *Carroll v. Manufacturers Trust Co.,* 202 F.2d 714 (2d Cir. 1953), the plaintiff attempted to circumvent the ninety-day attachment renewal stricture of former New York Civil Practice Act § 922(1) by invoking federal Rule 6(b), which provides that a court may enlarge the time in which an act is to be done. The court responded that it was "governed by New York law," which at that time provided "that an extension may be made by order of the court only within the original ninety day period." *Id.* at 715.

3. *See* note 2 *supra.*

4. Absent statutory authority, the traditional judicial concept of nunc pro tunc orders would not sanction the cure of a jurisdictional defect in this manner. "All courts have the inherent power to enter orders nunc pro tunc to show that their previous unrecorded acts ought to have been shown at that time." *Cairns v. Richardson,* 457 F.2d 1145, 1149 (10th Cir. 1972). However, the nunc pro tunc order "cannot supply an order which in fact was not previously made." *Crosby v. Mills,* 413 F.2d 1273, 1277 (10th Cir. 1969). Indeed, the New York Supreme Court, Appellate Division has stated that

(emphasis added).[2] N.Y.C.P.L.R. § 6214 governs the levy upon and seizure of property which, under New York procedure, perfect an attachment forming the basis for quasi in rem jurisdiction. Subsection (e) states:

> At the expiration of ninety days after a levy is made by service of the order of attachment, or of such further time as the court, upon motion of the plaintiff on notice to the parties to the action, has provided, the levy shall be void except as to property or debts which the sheriff has taken into his actual custody, collected or received or as to which a [special proceeding to compel payment or delivery] has been commenced.

This procedure changes former practice. Under section 922(1) of the New York Civil Practice Act, it was necessary to obtain an extension of time to execute on the levy within the original ninety days[3] "and an extension that was not timely could not be amended *nunc pro tunc.*"[4] 7A Weinstein-Korn-Miller, *New York Civil Practice* ¶ 6214.15, at 62–139 (1977) ("Weinstein-Korn-Miller"). Now, however, "CPLR 6214(e) is worded broadly enough to permit a court to grant an extension after the levy becomes void as long as any rights in the

where "the subject matter is jurisdictional the error cannot be corrected by an order *nunc pro tunc.*" *Smith v. State,* 53 A.D.2d 756, 758, 384 N.Y.S.2d 517, 520 (3d Dep't 1976) (statute of limitations on claim ran before plaintiff administratrix named to represent decedent's estate; no cure by amendment nunc pro tunc). Here, however, the Court is dealing with a statute that explicitly permits the continuation of time to perfect otherwise validly acquired jurisdiction, and since the manner of perfection is, within the limits of due process, a matter of legislative discretion, the legislature had the power to promulgate a statute authorizing the courts to perfect jurisdiction nunc pro tunc. *See* Medina, *Current Developments in Pleading, Practice and Procedure in the New York Courts,* 30 Cornell L.Q. 449 (1945) (commenting on issuance of nunc pro tunc corrections under the predecessor to section 6214(e), which required that an extension be obtained before the initial ninety days elapsed: "Perhaps the courts may take a more lenient view, but I do not see how the validity of *nunc pro tunc* orders can be reconciled with the section *as it now reads.*" *Id.* at 459 (emphasis added)).

property or debt acquired by a third person are protected." *Id.* at 62–140. In his Supplementary Practice Commentaries to section 6214, Professor McLaughlin concurs, explaining that

> [c]ontrary to the 1964 Supplementary Practice Commentary to [section 1614(e)], it has now been held that an order extending the plaintiff's time to reduce property to possession may be signed after the expiration of the ninety-day period in which the property should have been seized. *Seider v. Roth,* 1967, 28 A.D.2d 698, 280 N.Y.S.2d 1005. This result is commendable, so long as there are no intervening lienors.

7B *McKinney's Supp.Pamph.* 57 (1964–1977).

■ There appears to be no direct comment regarding the effect upon jurisdiction of a section 6214(e) extension granted beyond the initial ninety days.[5] However, the issue was implicitly decided in *Seider.* There the plaintiffs applied for a 6214(e) extension past the first ninety days and were given until ninety days after the entry of final judgment to reduce the jurisdictional-predicate res to possession.[6] Furthermore, the court found that "the affirmative defenses of lack of in rem jurisdiction were properly dismissed" in the court below, *id.,* 28 A.D.2d at 699, 280 N.Y.S.2d at 1007, and the plaintiffs were not required to recommence the action. Thus *Seider* may be interpreted to stand for the proposition that no jurisdictional lapse occurred once a nunc pro tunc extension was granted. *See also Cenkner v. Shafer,* 61 Misc.2d 807, 306 N.Y.S.2d 634 (Sup.Ct. Herkimer Cy.1970). The result is conceptually satisfactory, for re-

duction of the res to possession does not seem to be jurisdictionally critical once the levy has attached and the "presence" of the defendant is established, and once proper notice to the defendant completes the due process equation. This conclusion is buttressed by the facts that Admiralty Rule B does not require possession of the res in order to perfect jurisdiction and that state attachment modalities are merely an alternative to Admiralty Rule B procedure. Professor Moore has discussed the disparity between state and federal procedure in commencing a maritime claim and has opted for a liberal approach by the courts.

> Since a maritime claimant with an in rem or quasi in rem claim may, at his election, invoke remedies provided by state law, it seems to follow that if he does so, any limiting words in the state statute . . . would be applicable even though no such prohibition would have applied had he proceeded pursuant to the [Admiralty] Rules. . . . [L]ogic would . . . compel the conclusion that failure to comply with the state provision should result in the attachment being dismissed. Such a conclusion, however, appears overly technical if in fact a valid attachment could have issued pursuant to the federal rules. Under such circumstances, it is not believed that the attachment should be defeated by a narrow application of the state statute.

7A *Moore's Federal Practice* ¶ B.05, at B–202 n.3 (2d ed. 1977). Where, as here, the New York State Legislature appears to have provided a nunc pro tunc procedure

---

**5.** The statute makes no distinction between extensions on attachments made in aid of security or those obtained as a jurisdictional base.

**6.** It may be argued that the *Seider* res, a liability insurer's contractual obligation to defend and indemnify, is peculiarly incapable of reduction to possession, and that the *Seider* extension was justified in a way that is not analogous to the facts at bar. Indeed, the defendants point to language in *Seider* that endorsed the extension "in view of the novelty of the question, the uncertain state of the law and the fact that the requirement of CPLR 6214 is largely ministerial as it relates to intangible

property." *Seider v. Roth, supra,* 28 A.D.2d at 699, 280 N.Y.S.2d at 1007. However, defendants' argument addresses only the merits of this Court's action in granting the extension, an attack on the correctness rather than the legitimacy of the decision. Rule 60(b) is not a substitute for appeal. *Burnside v. Eastern Airlines, Inc.,* 519 F.2d 1127, 1128 (5th Cir. 1975). Furthermore, amended section 6214(e) makes no distinction between tangible or intangible property, nor does it condition the exercise of the court's discretion in granting the extension upon the ease or difficulty with which possession can be effected.

for perfecting a legitimate exercise of jurisdiction, and where the New York courts appear to have accepted, sotto voce, the validity of jurisdiction thus perfected, the circumstances seem even less deserving of an "overly technical" interpretation of state law.

### Effect of the Immunities Act

Because the Court concludes that it was correct in issuing its nunc pro tunc Order of March 31, 1977, and that there was no lapse in jurisdiction from the time the action commenced, defendants' assertion that the Immunities Act defeated jurisdiction is without merit. Jurisdiction was validly acquired prior to the effective date of the Immunities Act and by virtue of the nunc pro tunc Order obtained at the moment of entry of the default judgment on March 23, 1977.[7] Furthermore, this is not a situation that warrants retrospective application of the Immunities Act, whose preamble states "[c]laims of foreign states to immunity *should henceforth be decided* by Courts of the United States and of the States in conformity with the principles set forth in this chapter." 28 U.S.C. § 1602 (emphasis added). Clearly, at the time this suit was begun there was no prohibition against the use of attachment for jurisdictional purposes against a foreign sovereign or instrumentality thereof. In order to apply the Immunities Act retrospectively this Court would be required to assess whether such application interfered with antecedent rights and, if so, whether such interference was " 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.' " *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964), *quoting Union Pac. R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 58 L.Ed. 179 (1913). Rights were established in these plaintiffs by the entry of the default judgment for inquest on October 27, 1976, well before the effective date of the Immunities Act. The docket sheet reveals that notice of that act

was served on the defendants by registered mail on November 11, 1976, again before the Immunities Act took effect. Moreover, while the legislative history of the Immunities Act provides cogent reasons for eliminating attachments as a jurisdictional predicate, *e. g.*, that they involve "U.S. courts in litigation not involving any significant U.S. interest or jurisdictional contacts, apart from the fortuitous presence of property in the jurisdiction" and that they "can also give rise to serious friction in United States' foreign relations," H.R.Rep.No.94–1487, 94th Cong., 2d Sess. 7, *reprinted in [1976] U.S.Code Cong. & Admin.News*, pp. 6604, 6625–26, there seems no manifest congressional intent to permit foreign governments or their instrumentalities to reopen proceedings validly commenced by attachment made prior to the effective date of the Immunities Act. ("The elimination of attachment as a vehicle for commencing a lawsuit *will* ease the conduct of foreign relations by the United States." *Id.* at 6626 (emphasis added).)

### Validity of Quasi in Rem Proceedings Per Se

Invoking *Shaffer v. Heitner, supra*, the defendants challenge the propriety ab initio of beginning this suit by attachment. In *Shaffer*, the Supreme Court stated that "although the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State's jurisdiction." *Id.*, 433 U.S. at 209, 97 S.Ct. at 2582. The defendants maintain that *Shaffer* undermines and renders void this entire action, regardless of the effect of the Court's nunc pro tunc order and entirely apart from the policies expressed in the Immunities Act. Obviously the repercussions of *Shaffer* are—and will continue to be—enormous, and its effect on maritime attachment is yet to be assessed dispositively. However, in an extremely thoughtful

---

7. According to the Court's analysis concerning the validity of jurisdiction during the entire proceedings, the April 1, 1977, amended default judgment appears to have been a superfluity. However, since it was in the same amount as the valid March 23, 1977, default judgment, the error is harmless.

opinion, Judge Beeks of the United States District Court for the Western District of Washington recently held that "the recognized autonomy of admiralty jurisprudence, although not absolute, and the long constitutional viability of maritime attachment [compel the conclusion] that *Shaffer* does not reach Rule B(1) attachment." *Grand Bahama Petroleum Co., Ltd. v. Canadian Transp. Agencies, Ltd.*, 450 F.Supp. 447, 455 (W.D.Wash.1978) ("*Grand Bahama*"). In his opinion, Judge Beeks traced the history of admiralty jurisprudence and noted that its constitutional base is entirely independent from that of law and equity. Further, he distinguished the land-based concepts of "sovereignty," *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), and "contacts," *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Shaffer v. Heitner, supra*, from the concerns of admiralty, holding that "contacts" and "sovereignty" have never been in substantial conflict on the admiralty side where an action against property has historically been "the keystone of admiralty jurisprudence." *Grand Bahama, supra*, 450 F.Supp. at 453. *Inter alia* Judge Beeks cited a Supreme Court passage justifying maritime quasi in rem jurisdiction, the logic of which cannot be faulted even now when land-based quasi in rem jurisdiction is seriously eroded. In *In Re the Louisville Underwriters*, 134 U.S. 488, 10 S.Ct. 587, 33 L.Ed. 991 (1890), the Supreme Court explained that

> [c]ourts of admiralty are established for the settlement of disputes between persons engaged in commerce and navigation, who, on the one hand, may be absent from their homes for long periods of time, and, on the other hand, often have property or credits in other places. . . . To compel suitors in admiralty when the ship is abroad and cannot be reached by a libel *in rem*, to resort to the home of the defendant, and to prevent them from suing him in any district in which he might be served with a summons or his goods or credits attached, would not only often put them to great delay, inconvenience and expense, but

would in many cases amount to a denial of justice.

*Id.* at 493, 10 S.Ct. at 589, *quoted in Grand Bahama, supra*, 450 F.Supp. at 453.

▋ This Court finds *Grand Bahama* persuasive, and concurs in the opinion that *Shaffer* does not destroy the venerable tradition of maritime action commenced quasi in rem.

### Remaining Rule 60(b) Considerations

▋ Having determined that its previous judgment was not void for lapse in jurisdiction, the Court must consider whether defendants should be relieved from judgment by reason of "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(1). However, defendants are time-barred from asserting any or all of those reasons, for all 60(b) motions must be made "within a reasonable time," and 60(b)(1) motions must be made "not more than one year after the judgment . . . was entered." This Court entered its final Amended Judgment on April 1, 1977, one year and two days before the instant motion was filed. The Court is thus without power to grant a Rule 60(b)(1) motion. *Radack v. Norwegian American Line Agency, Inc.*, 318 F.2d 538, 541 (2d Cir. 1963).

▋ However, defendants have also suggested vacatur under Rule 60(b)(6), *i.e.*, for "any other reason justifying relief from the operation of the judgment." Although this branch of Rule 60(b) is not circumscribed by the one-year time bar, it *is* governed by "reasonable time." Furthermore, it is well established that a proper case for Rule 60(b)(6) relief is only one of extraordinary circumstances or extreme hardship. *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977). Defendants do not claim any "hardship" other than the implicit one of losing funds through execution of the default judgment; indeed, their case for Rule 60(b)(6) relief seems to turn on the assertion of the invalidity of jurisdiction under the Immunities Act, an assertion more properly considered under Rule 60(b)(4) authorizing vacatur for void judgments. Nevertheless, the Court has given considerable thought to

the confluence of unusual occurrences in this case—plaintiffs' dereliction in perfecting the attachment, the shadow cast by *Shaffer, supra,* and the intervening passage of the Immunities Act—to determine whether the circumstances are so "extraordinary" as to merit application of Rule 60(b)(6). In deciding in the negative, the Court is influenced by the defendants' failure to assert anything but a sketchy and desultory defense on the merits of the underlying action and is mindful that both the enactment of the Immunities Act and the issuance of the *Shaffer* decision were fortuitous occurrences which could not have retrospectively defeated this action had it been commenced and concluded under Admiralty Rule B. Moreover, the Court is discomfited by the fact that defendants waited over a year to challenge this judgment, and then did so on theories that bespeak legal serendipity rather than "extraordinary circumstances" or "extreme hardship." This case does not fit within the standard enunciated by our court of appeals for vacatur pursuant to Rule 60(b)(6):

> Where one timely seeking Rule 60(b)(6) relief from a default judgment can make out a strong case that he had a meritorious defense which could have been asserted but for a truly extraordinary turn of events not covered by the first five clauses of [Rule 60(b)] and which brought about his default and resulted in substantial injustice to him, it is appropriate to vacate the judgment so that the merits of his case can be considered.

*United States v. Cirami, supra,* 563 F.2d at 35.

For all the foregoing reasons, the defendants' motions under Rules 55(c) and 60(b) to vacate the amended default judgment entered against them on April 1, 1977, are denied.

So ordered.