**CORPORACION VENEZOLANA de FOMENTO, Plaintiff,**

v.

**VINTERO SALES CORPORATION et al., Defendants,**

and

**Canadian Imperial Bank of Commerce et al., Intervening Defendants,**

and

**Venezolana de Cruceros Del Caribe, CA., Additional Defendant on the Counterclaim by Intervening Defendants,**

and

**Merban International, Inc., Additional Defendant on the Second Crossclaim by Intervening Defendants.**

No. 76 Civ. 1671 (RWS).

United States District Court,
S. D. New York.

Sept. 26, 1979.

As Amended Nov. 14, 1979.

---

Healy & Baillie, New York City, for plaintiff.

White & Case, New York City, Paskus, Gordon & Hyman, New York City, for defendants Merban Corp.

Thacher, Proffitt & Wood, New York City, for defendants Vintero Sales Corp. et al.

Baker & McKenzie, New York City, for intervening defendants American Security Bank et al.

Sherman & Sterling, New York City, for intervening defendants Canadian Imperial Bank of Commerce, et al.

## OPINION

SWEET, District Judge.

Plaintiff Corporacion Venezolana de Fomento ("CVF"), after losing on its own claims and on defendants' counterclaims, now challenges this court's jurisdiction over the subject matter and seeks dismissal of the action pursuant to Fed.R.Civ.P. 12(h)(3).

The facts underlying this dispute are set forth by the Honorable William C. Conner in *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 452 F.Supp. 1108 (S.D.N.Y.1978) and may be summarized as follows. CVF is a corporation wholly owned by the Venezuelan government, which gives financial backing, in the form of guarantees, to projects designed to stimulate Venezuelan economic development. Defendant, the Merban Corporation ("Merban"), is a Swiss corporation doing business in New York, which purchases debt instruments issued or guaranteed by financial institutions or governmental entities. All other corporate defendants have their principal places of business in New York and all individual defendants are citizens of New York.

Originally, CVF sought a declaratory judgment as to the validity of guarantees made by CVF on two loan agreements between Merban (the lender) and Venezolana de Cruceros Del Caribe ("Cariven") (the borrower). Merban, and six intervening Canadian and American banks which purchased participating interests in the guaranteed notes issued in connection with the loan agreements, asserted that the loans were in default and counterclaimed for the award of principal and interest. Judge Conner granted summary judgment for the intervening banks, finding them holders in due course and not subject to the defenses asserted against the other defendants. 452 F.Supp. at 1120. After a bench trial on the remaining issues, this court[1] found that CVF's allegations of fraud had not been

---

1. After summary judgment was granted for the intervening defendants, the case was transferred to this court for trial.

proven, and that Merban was entitled to recover because the notes and CVF's guarantees were valid obligations enforceable according to their terms. *Corporation Venezolana de Fomento v. Vintero Sales Corp.,* No. 76–1671 (S.D.N.Y. Feb. 13, 1979).

CVF appealed Judge Conner's decision and thereafter sought dismissal of the entire action on the grounds that federal jurisdiction was improvidently granted. The issue of subject matter jurisdiction was not raised previously, although it was assumed throughout the action that jurisdiction was based on diversity of citizenship. *See Corporation Venezolana de Fomento v. Vintero Sales Corp.,* No. 76–1671, slip op. at 1 (S.D. N.Y. Feb. 13, 1979); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 452 F.Supp. 1108, 1110 (S.D.N.Y.1978).[2] Accordingly, the Second Circuit then remanded the case to this court for consideration of that issue. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 607 F.2d 994 (2d Cir. 1979).

Upon more careful consideration, it appears that there is no diversity of citizenship in this case. This court does have jurisdiction over the subject matter of the action, however, because the defendants' counterclaims arise under the Foreign Sovereign Immunities Act and under the Edge Act.

### A. Diversity Jurisdiction

The district court has original jurisdiction over actions between citizens of a state and citizens of a foreign state. 28 U.S.C. § 1332(a)(2). It does not, however, have jurisdiction over actions between aliens, *Hodgson v. Bowerbank,* 5 Cranch 303 (1809); *ITT v. Vencap, Ltd.,* 519 F.2d 1001, 1015 (2d Cir. 1975), even if the aliens are from different countries. 1 *Moore's Federal Practice* ¶ 0.75[1.–2] (2d ed. 1979). Similarly, a lack of complete diversity will defeat jurisdiction if an alien sues a citizen of

a state and another alien. *See ITT v. Vencap, Ltd., supra;* 1 *Moore's Federal Practice, supra.*

Defendants note that under 28 U.S.C. § 1332(c), a corporation is deemed a citizen both of the state by which it has been incorporated and of the state in which it has its principal place of business. They contend that this section applies to alien as well as domestic corporations, and indeed, some courts have adopted that view. *See, e. g., Arab International Bank & Trust Co. v. National Westminster Bank, Ltd.,* 463 F.Supp. 1145 (S.D.N.Y.1979); *Jerro v. Home Lines, Inc.,* 377 F.Supp. 670, 672 (S.D. N.Y.1974); *Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001, 1005–07 (N.D.Ill.1973). From this premise they argue that since Merban was a citizen of Switzerland and of New York, diversity of citizenship between the parties exist under 28 U.S.C. § 1332(a)(2).[3]

There is, however, substantial authority against the view that section 1332(c) applies to alien corporations. *See e. g., Tsakonites v. Transpacific Carriers Corp.,* 246 F.Supp. 634 (S.D.N.Y.1965), *aff'd,* 368 F.2d 426 (2d Cir.) *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 434 (1967); *Chemical Transp. Corp. v. Metropolitan Petroleum Corp.,* 246 F.Supp. 563 (S.D.N.Y.1964); *Mazzella v. Pan Oceanica A/S Panama,* 232 F.Supp. 29 (S.D.N.Y.1964); *Eisenberg v. Commercial Union Assurance Co.,* 189 F.Supp. 500 (S.D.N.Y.1960). *See also Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624 n.5 (2d Cir. 1976) (indicating that alien corporations are "probably deemed to be citizens exclusively of [their home country] for diversity purposes"). In addition, even if § 1332(c) applies to alien corporations, it should be interpreted as it is for domestic corporations, *i. e.,* to preclude corporations with "dual citizenships" from alleging only one of its citizenships in order to meet the

---

**2.** CVF alleged in its complaint that Merban was a New York corporation with its principal place of business in New York, and that there was diversity between the parties in accordance with 28 U.S.C. § 1332. Merban's answer later revealed that it is a Swiss corporation qualified to do business in New York.

**3.** This argument further assumes that Merban has its principal place of business here. Although Merban's answer reflects that its principal place of business is here, CVF now disputes that assertion.

diversity requirement. 1 *Moore's Federal Practice* ¶ 0.77[2.–1]. Most of the cases that have applied § 1332(c) to alien corporations have adopted this approach. *See, e. g., Jerro v. Home Lines, Inc., supra* and *Southeast Guaranty Trust Co. v. Rodman and Renshaw, Inc., supra*, (finding no diversity of citizenship in actions between alien corporation having its principal place of business in a state and a citizen of the same state).

In *Bergen Shipping Co. v. Japan Marine Serv., Ltd.*, 386 F.Supp. 430 (S.D.N.Y.1974), an exception to this trend, the court in dictum indicated that section 1332(c) may be used by an alien corporation with its principal place of business in New York to create diversity jurisdiction in an action against another alien. *Id.* at 433–34. The court found that Congress, in enacting section 1332(c), sought to eliminate the evil whereby a local institution could bring its litigation into federal court simply because it was incorporated in another state. In view of that policy, the court reasoned that any corporation with its principal place of business in a state should be deemed a citizen of that state. No consideration apparently was given as to why an alien corporation could selectively allege only one citizenship when a domestic corporation could not.

Subsequently in *Hercules Incorporated v. Dynamic Export Corporation*, 71 F.R.D. 101 (S.D.N.Y.1976), diversity jurisdiction was found lacking where both parties were aliens, even though one of the aliens had its principal place of business in New York. In *Hercules*, the court noted:

> The statute [§ 1332(c)] creates a principal of dual citizenship, not one of alternative citizenship. Thus, where a corporation is incorporated in state A and has its principal place of business in state B and the

adverse party is a citizen of either A or B, diversity is lacking. . . . Likewise, assuming *arguendo* that § 1332(c) is applicable to alien corporations, when an alien corporation with its principal place of business in state A is adverse to either an alien or a citizen of state A, diversity would be lacking. *Id.* at 107 (citations omitted).

*Accord Torres v. Hartford Ins. Co.*, 588 F.2d 848, 850 (1st Cir. 1978). This result is consistent with the underlying purpose of section 1332, which is to restrict federal jurisdiction, *see* S.Rep.No.1830, 85th Cong., 2d Sess. (1958); H.Rep.No.1706, 85th Cong., 2d Sess. (1958), and will be here adopted. No jurisdiction exists under 28 U.S.C. § 1332.

## B. Federal Question Jurisdiction

At the time this action commenced, no alternative bases of subject matter jurisdiction were alleged. The intervening defendants now seek to amend their pleadings to assert federal question jurisdiction. They rely on 28 U.S.C. § 1653, which allows amendment of the pleadings to cure defective allegations of jurisdiction at various stages of the action. *See* 6 Wright and Miller, *Federal Practice and Procedure* § 1474 at 378 (1972).[4]

Section 1653 usually is to be construed liberally to permit the action to be maintained if it is at all possible to determine from the record that jurisdiction exists. *See Tatum v. Laird*, 144 U.S.App.D.C. 72, 77 n.8, 444 F.2d 947, 952 n.8 (D.D.C.1971); *Cox v. Livingston*, 407 F.2d 392, 393 (2d Cir. 1969); *John Birch Society v. National Broadcasting Co.*, 377 F.2d 194, 198 (2d Cir. 1967). Without mentioning section 1653, the courts have also allowed amendments that change the entire theory of subject matter jurisdiction upon which the parties rely.[5] *See, e. g., Shows v. Harber*, 575 F.2d

---

4. 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

5. Section 1653 does not, by its terms, necessarily allow amendments to allege new theories of subject matter jurisdiction. The language of that section is more specific than that of Fed.R. Civ.P. 15(a), which provides for amendment of

the pleadings. The cases do not reveal a conflict between the two, however, *see* 6 Wright and Miller, *Federal Practice and Procedure* § 1474 at 378, and some courts have relied solely on Rule 15(a) to permit amendments to cure deficient statements of subject matter jurisdiction. *Id.*

1253 (8th Cir. 1978) (permitting amendment to allege essentials of diversity jurisdiction after finding insufficient basis for admiralty or maritime jurisdiction); *Adekalu v. New York City,* 431 F.Supp. 812 (S.D.N.Y. 1977) (permitting amendment to allege diversity jurisdiction after dismissal of federal claim for failure to state a cause of action). Such amendments may even be allowed to assert alternative grounds of jurisdiction after the circuit court has remanded an action to the district court for a determination as to whether subject matter jurisdiction exists. *See Eisler v. Stritzler,* 535 F.2d 148, 152–53 (1st Cir. 1976). *See also International Ladies' Garment Workers' Union v. Donnelly Garment Co.,* 121 F.2d 561 (8th Cir. 1941).

Here, leave to amend the pleadings to allege different bases of subject matter jurisdiction will be granted if it is shown that jurisdiction exists under any other theory of subject matter jurisdiction.[6] Significant time and expense already have been expended by the parties and the court to adjudicate the issues; relitigation would not serve the interests of justice if the court has subject matter jurisdiction.

**6.** The fact that defendants, rather than CVF, seek to amend the pleadings is not a bar to such amendments. This situation is distinguishable from *McRae v. Arabian American Oil Co.,* 293 F.Supp. 844, 847 (S.D.N.Y.1968), in which the court would not allow defendant to amend its answer to assert jurisdiction because it believed that § 1653 referred only to the complaint. In the case at bar, defendants are asserting counterclaims which may be within the court's jurisdiction to hear, regardless of the fate of the main action. In addition, defendants in other contexts have been allowed to amend the pleadings under § 1653 in order to show that jurisdiction exists. *See* 6 Wright and Miller, *Federal Practice and Procedure* § 1474 at 379 (1971).

**7.** Section 1330(a) of Title 28 provides:

The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

### 1. Jurisdiction Under the Foreign Sovereign Immunities Act

■ Defendants assert that this court has jurisdiction over its counterclaims under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602–11 (1978). The Immunities Act added section 1330 to Title 28 of the United States Code to provide the district courts with subject matter and personal jurisdiction over nonjury civil actions that involve claims against foreign states with respect to which they are not entitled to immunity.[7] "Foreign state" includes any corporate entity, a majority of whose shares is owned by a foreign state. *See* 28 U.S.C. § 1603(b).[8] Because CVF is a corporation organized under the laws of Venezuela, whose capital stock is wholly owned by the Republic of Venezuela, a claim against it by Merban and the intervening banks confers subject matter jurisdiction on this court unless barred by sovereign immunity.[9]

The original action was commenced on April 9, 1976, nine months before the effective date of the Act. In *Yessenin-Volpin v. Novosti Press Agency,* 443 F.Supp. 849

**8.** "Foreign state" is defined in 28 U.S.C. § 1603(a) as an agency or instrumentality of a foreign state as defined in subsection (b). Section 1603(b) defines "agency or instrumentality" as any entity:

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

**9.** It is undisputed that CVF never claimed and is not entitled to immunity in this case. Because it did not raise a defense of sovereign immunity in its responsive pleadings, it implicitly waived a defense of sovereign immunity. *See* H.Rep.No.1487, 94th Cong., 2d Sess. at 18 (1976) U.S.Code Cong. & Admin.News 1976, p. 6604. *See also* 28 U.S.C. § 1607(b) (no immunity for counterclaim "arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state").

(S.D.N.Y.1978), the Immunities Act was held applicable to a suit pending in the court before the effective date of the Act. *See also National American Corp. v. Fed. Republic of Nigeria,* 448 F.Supp. 622, 639 (S.D.N.Y.1978) *aff'd,* 597 F.2d 314 (2d Cir. 1979). The court noted that the preamble to the Act states:

> Claims of foreign states to immunity *should henceforth be decided* by the courts of the United States and of the States in conformity with the principles set forth in this chapter. 28 U.S.C. § 1602 (emphasis in original).

It also relied upon the fact that application of the Act "will give effect to the congressional intent and will not interfere with the antecedent rights of the parties." *Id* 443 F.Supp. at 851 n. 1.

These cases, like the case at bar, are distinguishable from the other decisions in this district in which the Act was not applied retroactively. In *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 459 F.Supp. 1242 (S.D.N.Y. 1978); *aff'd,* 605 F.2d 648 (2d Cir. 1979), a jurisdictional attachment which had been validly obtained prior to the passage of the act would have been invalidated by its application, causing the antecedent rights of the parties to be adversely affected. In *Martropico Compania Naviera S. A. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (Pertamina),* 428 F.Supp. 1035 (S.D.N.Y.1977) and *Rasu Maritama S. A. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (Pertamina),* No. 77–263 (S.D.N.Y. March 7, 1977), retroactive effect was not given to provisions of the Act to

permit removal of actions commenced in state court. As the Honerable Gerard Goettel noted, these cases turned "on the strict construction given removal statutes and the inadvisibility of permitting removal of all cases pending on the effective date of the Act without regard to how far the proceeding had progressed." *National American Corp. v. Federal Rep. of Nigeria, supra* at 638.

This action, however, has progressed to its conclusion and the antecedent rights of the parties will not be affected adversely by retroactive application of the Act.[10] CVF contends that there has been no claim of sovereign immunity in this action and that therefore the Act in this instance is not applicable. In the absence of the exceptions noted above and any adverse effect on any antecedent rights, logical construction of the Act requires consistent application of retroactivity even though CVF has chosen not to assert an immunity defense. Section 1605(a) of Title 28 specifically provides that a foreign state shall not be immune from the jurisdiction of courts of the United States in cases in which the foreign state has waived its immunity either explicitly or by implication.[11] In addition, the House Report to the bill states that the purpose of the Immunities Act is both to provide when and how parties can maintain lawsuits against foreign states as well to provide when foreign states are entitled to immunity. *See* H.R.No.1487, 94th Cong., 2d Sess. at 6–7 (1976), U.S.Code Cong. & Admin. News 1976, p. 6605.

The Immunities Act therefore confers jurisdiction over the counterclaims of Mer-

---

**10.** CVF can hardly claim that it is deprived of its right to stay out of federal court when it is the party which attempted to have this court adjudicate the matter to begin with. In this regard, *see Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d at 654 n.5 (2d Cir. 1979), which cites *National American Corp. v. Federal Republic of Nigeria, supra,* with approval and notes that "[t]here, retrospective application [of the Immunities Act] *expanded* jurisdiction and did not interfere with antecedent rights" (emphasis in original).

**11.** 28 U.S.C. § 1605(a) states:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
> (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver.

ban and the intervening banks, since they constitute claims against a foreign state. Even though Merban's compulsory counterclaim was initially brought in response to CVF's claims, because there is a separate basis of federal jurisdiction, the counterclaim may be allowed to proceed without regard to the fate of the main claim. *Ferguson v. Eakle*, 492 F.2d 26, 28 n.6 (3rd Cir. 1974); *National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 389 (3d Cir. 1973); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 452 F.Supp. 1108, 1110 (S.D.N.Y.1978); *Rare Earth, Inc. v. Hoorelbeke*, 401 F.Supp. 26, 34–35 (S.D.N.Y. 1975); 6 Wright and Miller, *Federal Practice and Procedure* § 1414 at 80 (1972). Similarly, the banks' claims may be decided because a third party action that is supported by an independent basis of subject matter jurisdiction may be adjudicated even after the dismissal of the main action for lack of jurisdiction. *See Rare Earth, Inc. v. Hoorelbeke*, 401 F.Supp. 26, 35 (S.D. N.Y.1975); 6 Wright and Miller, *Federal Practice and Procedure* § 1444 at 237 (1972); 3 *Moore's Federal Practice* ¶ 14.26 at 14–533 (2d ed. 1979).

### 2. Jurisdiction Under the Edge Act

■ Defendants also assert that subject matter jurisdiction over this action is conferred by 12 U.S.C. § 632, which provides:

Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking . . . or out of other international or foreign operations . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have jurisdiction of all such suits.

The intervening banks allege that this court has jurisdiction over the action because Security Pacific International Bank (Security Pacific), a bank organized under the laws of the United States, was an original defendant in this action. Security Pacific was named in the action because Merban opened irrevocable letters of credit with Security Pacific for the account of Cariven, and Security Pacific issued certificates of participation to the intervening banks, transferring ownership in the notes to the extent of the interest purchased. On July 25, 1977, Security Pacific was dismissed from the action by stipulation of the parties.

Judge Conner found that the role played by Security Pacific in this affair was simply that of depository and collection agent. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 452 F.Supp. at 1116. According to the terms of the certificates it issued, its duties and liabilities were limited to presenting the notes for collection at maturity and accounting for the amount received for the notes.[12] Consequently, Security Pacific was subject to no apparent liability for CVF's claim.

Mere stakeholders or escrow agents which are not subject to liability in the lawsuit, are not real parties to the action, and their presence does not provide a basis

12. The certificates issued by Security Pacific to each American bank state:

Subject to the terms and conditions of the Notes and further subject to [Security Pacific] having received from the Maker funds sufficient to pay the entire face amount of each Note, the amounts due in respect of each Participation shall be payable upon presentation of this Certificate at the aforesaid office of [Security Pacific].

\* \* \* \* \* \*

[Security Pacific] shall have no duty, liability or responsibility in any capacity (whether of agency, trust or otherwise) to the Participant or any other person except to present the Notes for collection at maturity and account to the Participant to the extent of its Participation for amounts received by [Security Pacific] in respect of the Notes and no other duty, liability or responsibility shall be inferred or implied.

for jurisdiction. *See Bata v. Central Penn National Bank of Philadelphia*, 223 F.Supp. 91 (E.D.Pa.1963); *Chase National Bank of New York v. Directorate General*, 95 F.Supp. 733 (S.D.N.Y.1959). Accordingly, a party whose role in a lawsuit is merely that of a depository or stakeholder is to be classified as a nominal party. *Armstrong Cover Co. v. Whitfield*, 418 F.Supp. 972 (N.D.Ga. 1976). Since Security Pacific was merely a depository and collection agent, and not potentially liable in this action, its brief presence in the action did not confer jurisdiction under 12 U.S.C. § 632.

Defendants also contend that the intervention as of right in the suit by the American banks, both of which are corporations organized under the laws of the United States, also vests the court with jurisdiction under 12 U.S.C. § 632. Although Judge Conner originally viewed these counterclaims as ancillary [13] to the claims asserted by Merban against CVF, *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 452 F.Supp. at 1110 n.1, it appears that these claims also confer on this court juris-

diction over the subject matter. The transactions underlying this cause of action "have a distinctly international flavor," 452 F.Supp. at 1111,[14] and the intervening banks are parties with real interests in this action, unlike Security Pacific.

As a general rule, intervention will not serve as a means of conferring jurisdiction on an action. 3B *Moore's Federal Practice* ¶ 24.16[2] at 24–612 (2d ed. 1979). A court may, however, treat the pleadings of an intervenor as a separate action in order to adjudicate the claims raised by the intervenor. *See Miller & Miller Auctioneers, Inc. v. G. W. Murphy Industries, Inc.*, 472 F.2d 893, 895 (10th Cir. 1973); *Atkins v. State Bd. of Ed.*, 418 F.2d 874 (4th Cir. 1969); *Fuller v. Volk*, 351 F.2d 323, 328–29 (3rd Cir. 1965); *In re Raabe, Glissman & Co.*, 71 F.Supp. 678 (S.D.N.Y.1947); 7A Wright & Miller, *Federal Practice and Procedure* § 1917 (1972). This discretionary procedure is properly utilized here to establish jurisdiction over the counterclaims of the American banks against CVF because failure to adjudicate the claim will result only in un-

**13.** The term "ancillary" or "ancillary jurisdiction" describes those claims that are so closely related to the main claim that the court will adjudicate them regardless of the absence of a separate basis of subject matter jurisdiction. *See* Wright and Miller, *Federal Practice and Procedure*: Jurisdiction § 3523 (1975). "Pendent jurisdiction" permits a plaintiff, in appropriate circumstances, to join with his federal claim a related state claim over which the court has no independent basis of subject matter jurisdiction. *See* Wright and Miller, *supra* at § 3567 (1975). The doctrines of ancillary and pendent jurisdiction are distinguishable in that pendent claims are asserted by plaintiffs in their complaints and ancillary claims usually are asserted after the complaint is filed by one other than the plaintiff. *See Aldinger v. Howard and Pendent Jurisdiction*, 77 Colum.L.Rev. 127, 128 n.5 (1977).

**14.** It is hard to imagine a factual situation that better describes "transaction including international or foreign banking" or "international or foreign operations" than the case at bar. As Judge Conner noted:

The loan agreements in issue in this case—one executed on April 30, 1975 (the "April Agreement") and the other on October 15,

1975 (the "October Agreement")—have a distinctly international flavor. The parties thereto are defendant The Merban Corporation ("Merban") (the lender), a Swiss corporation with its principal place of business in New York; Venezolana de Cruceros del Caribe, C.A. ("Cariven") (the borrower), a Venezuelan corporation with its principal place of business in Caracas, Venezuela; and plaintiff Corporacion Venezolana de Fomento ("CVF") (the guarantor), a Venezuelan corporation wholly owned by the government of Venezuela and organized to help obtain financing for new industry. The purpose of the loans was to finance Cariven's purchases of two vessels, the S.S. Santa Rosa and the S.S. Santa Paula, from a New York corporation with its principal place of business in New York, defendant Vintero Sales Corporation ("Vintero") (the seller).

452 F.Supp. at 1111.

**15.** *Cf. Hackner v. Guaranty Trust Co.*, 117 F.2d 95 (2d Cir. 1941) (adding plaintiff after dismissal of original plaintiffs and allowing continuation of action to avoid delay and expense of a new suit).

necessary delay and needless litigation in another forum. *See Fuller v. Volk, supra* at 329.[15]

### C. Jurisdiction Over Plaintiff's Claims

■ Having concluded as stated above that this court had jurisdiction to consider the claims of all of the defendants, it is necessary to consider the fate of CVF's claims. At this point, CVF's claims take on the appearance of compulsory counterclaims under Fed.R.Civ.P. 13(a), because they arise out of the transaction or occurrence that is the subject matter of the opposing party's claim.[16] Any claim that is logically related to another claim that is being sued upon is properly the basis of a compulsory counterclaim. 3 *Moore's Federal Practice* ¶ 13.13 (2d ed. 1979). Consequently, CVF's claims against the defendants are compulsory counterclaims, and as such, invoke the court's ancillary jurisdiction. *See Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926).

Because defendants' claims were properly before this court and because these claims have been fully litigated, defendants' counterclaims are deemed amended to assert federal question jurisdiction, and CVF's motion to dismiss is denied.

IT IS SO ORDERED.

---

**16.** Alternatively, even if CVF's claims are not viewed as compulsory counterclaims, its claims for declaratory relief have, in effect, been decided by the decisions for the defendants, and are barred in the future by the doctrine of *res judicata*.