CRYSEN SHIPPING CO., Plaintiff,

v.

BONA SHIPPING CO., LTD., Defendant,

and

New England Petroleum Corp., d/b/a Charter Marine Transportation Co., Garnishee.

No. 82–1096–Civ–J–JHM.

United States District Court, M.D. Florida, Jacksonville Division.

Nov. 19, 1982.

Mark C. Flavin, Haight, Gardner, Poor & Havens, New York City, Almer W. Beale, II, and Robert E. Warren, Toole, Taylor, Moseley & Joyner, Jacksonville, Fla., for plaintiff.

Richard G. Rumrell and Stephen A. Hould, Smathers & Rumrell, Jacksonville, Fla., James M. Textor, Cichanowicz & Callan, New York City, for defendant.

William Everett Kuntz, Smith & Hulsey, Jacksonville, Fla., for garnishee.

## OPINION

JOHN H. MOORE, II, District Judge.

This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h), *Fed.R.Civ.P.* It arises from the filing of an Amended Verified Complaint by Plaintiff, Crysen Shipping Co. (hereinafter "Crysen") on November 2, 1982. The complaint seeks a judgment against Defendant, Bona Shipping Co., Ltd. (hereinafter "Bona"), in the amount of $430,222.33 plus interest, costs and a reasonable attorney's fee, for damages allegedly incurred by Plaintiff under the terms of a charter party. The complaint further sought to have process of Maritime Attachment and Garnishment issue, in accordance with the Supplemental Rules for certain admiralty claims of the *Fed.R.Civ.P.*, for all monies, goods, chattels, credits and effects due Bona in the possession of Charter Marine Transportation Co.

The attachment was accomplished pursuant to Supplemental Admiralty Rule B(1), *Fed.R.Civ.P.* On November 9, 1982, Bona filed a Motion to Dismiss or to Quash Amended Process of Maritime Attachment and Garnishment or for an Immediate Determination of Quantum of Damages. On the same date, Bona filed a request for emergency hearing and oral argument on its Motions. Crysen filed its response in opposition to the Motions on November 12, 1982. A hearing on the matter was held on November 15, 1982.

Bona challenges the Amended Process of Maritime Attachment and Garnishment on the following grounds:

1. Rule B(1) of the Supplemental Rules of Admiralty and Maritime Procedure is unconstitutional since it violates procedural due process under the Fifth Amendment to the United States Constitution;

2. Rule B(1) is unconstitutional since it violates substantive due process under the Fifth Amendment to the United States Constitution;

3. Plaintiff failed to strictly comply with Rule 7.08, Rules of the United States District Court, Middle District of Florida, in seeking the issuance of the Amended Process of Maritime Attachment and Garnishment.

It is well settled that the Court should not pass upon a constitutional issue, though it be properly presented by the record, if there is a non-constitutional ground upon which the case may be decided. *Wood v. Strickland,* 420 U.S. 308, 314, 95 S.Ct. 992, 996, 43 L.Ed.2d 214 (1975). Consequently, the Court will first address Bona's contention that Plaintiff failed to strictly comply with Local Rule 7.08. Bona argues that the verification of the underlying amended complaint fails to comply with the requirements of Rule 7.08 in that it was made by an attorney without a statement of the reason why verification was not made by the party or a corporate officer and the verification failed to state that the attorney was so authorized to act. While the Court is in agreement that Plaintiff did not strictly comply with Rule 7.08, it finds substantial compliance therewith has been met by

Plaintiff and any deficiency in the verification does not form the basis for an Order quashing the Amended Process of Maritime Attachment and Garnishment. As pointed out by Plaintiff, Rule 7.08 itself provides the remedy for the deficiency in the verification in this case:

> Any interested party may move the Court with or without a request for stay, for personal oath of a party or all parties, or that of a corporate officer. If required by the Court such verification shall be procured by commission or as otherwise ordered.

Consequently, the Court concludes that Bona's Motion to Quash on this ground should be denied.

■ Having disposed of the only non-constitutional issue presented, the Court now addresses the constitutional issues raised by Bona. For the reasons that follow, the Court finds that Rule B(1) is unconstitutional because it fails to provide for procedural due process under the Fifth Amendment to the United States Constitution. Consequently, Bona is entitled to an Order quashing the process issued under that Rule. Because the process will be quashed on this ground, the Court will not reach the issue of whether Rule B(1) is also violative of substantive due process.

Neither the United States Supreme Court nor the Fifth or Eleventh Circuit Courts of Appeals have considered the constitutionality of Rule B(1) in light of the due process requirements set forth in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and the line of cases that have followed. *See Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *North Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). The Fifth Circuit Court of Appeals has held that the *in rem* seizure of a vessel pursuant to Supplemental Admiralty Rule C is constitutional, but has expressly declined to rule on the constitutionality of Rule B(1). *Merchants Nat'l Bank of Mobile v. The Dredge Gen. G.L. Gillespie*, 663 F.2d 1338, 1343, nt. 9 (5th Cir.1981).

However, on July 16, 1982, the Honorable George C. Carr entered an unpublished opinion in *Cooper Shipping v. Century 21 Exposition*, 82–535–Civ–T–GC (Middle District of Fla., Tampa Division) declaring Rule B(1) unconstitutional on due process grounds. Plaintiff has advised the Court that presently pending before Judge Carr in the *Cooper* case is a Motion for Reconsideration of his decision based on the recent decision by the Ninth Circuit Court of Appeals in *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627 (9th Cir.1982), which upheld the constitutionality of Rule B(1) on due process grounds.

This Court, of course, does not know whether Judge Carr will alter his decision in *Cooper* in light of *Polar*. However, this Court agrees with Judge Carr's reasoning in *Cooper* and will follow it in this case.

Rule B(1) does not provide for pre-attachment notice or hearing nor for prompt post-attachment notice and hearing. Upon the filing of a verified complaint, accompanied by an affidavit of the Plaintiff or his attorney, which may consist of conclusory allegations based on information and belief, the Court Clerk must issue the process. No judicial participation is needed for issuance of the process and no particularized showing of entitlement to the attachment is necessary. The Court Clerk cannot consider the contents of the documents filed and has no discretion in the matter. Moreover, prompt notice to the Defendant is not required; the Rule only expressly requires that notice be given to the Defendant before a default judgment can be entered and the property sold to satisfy the Plaintiff's claim. A Defendant is provided with the opportunity of obtaining the release of the attached property, upon the posting of a bond under Rule E(5) of the Supplemental Admiralty Rules.

The basic question presented here is whether the same procedural due process required before the deprivation of property

in a non-maritime action should be required before attachment under maritime law, specifically under Rule B(1). Rule B(1) has a dual purpose: (1) to obtain *in personam* jurisdiction over a Defendant through his property, and (2) to assure satisfaction of a judgment in Plaintiff's favor. This differs from the seizure of a ship under Supplemental Admiralty Rule C which is necessary because of the mobile and international character of shipping. Such seizure may be the only way to prevent "the highly mobile *res* [from escaping] lawful claims upon it." *Cooper, supra,* at pg. 2. Moreover, the property that can be attached under Rule B(1) need have no connection with a vessel nor with a debt due the Defendant arising from the shipping industry. In contrast, an attachment of a vessel *in rem* under Rule C is directly related with a vessel in that the vessel is regarded as the party liable. The complaint filed by a maritime lienor requesting attachment of the vessel constitutes the process that brings that entity into Court, and once a warrant of arrest is issued pursuant to the complaint, the shipmaster knows of the arrest and is in a position to notify the owner. Moreover, the maritime lien that is enforced by the provisions of Rule C is a lien that is peculiar to the law of admiralty. *Merchants National Bank v. Dredge G.L. Gillespie,* 663 F.2d 1338, 1350 (5th Cir.1981). The attachment of goods of the Defendant in the hands of a third person allowed by Rule B(1) to assure security for a possible judgment is not peculiar to the law of admiralty. In fact, Rule B(1) provides that a Plaintiff can, in addition to this rule or in the alternative, invoke the remedies provided by state law for attachment and garnishment or similar seizure of the Defendant's property. Therefore, the rationale for allowing the attachment of a vessel under Rule C without the due process safeguards set forth in *Sniadach, supra,* and its progeny does not apply to attachment under Rule B(1). As noted by the Court in *Gillespie, supra,* "A maritime lien represents a property interest entirely distinct from an *in personam* right. 'An action in admiralty to enforce a maritime lien is not an action

against any particular person to compel him to do or forbear anything; it is an action *in rem* asserting against the world the claim of a plaintiff to an offending ship. It is a real action to enforce a real right.'" At pg. 1350 [citations omitted].

The Court is not persuaded by the majority opinion in *Polar, supra,* which seems to rest on that court's opinion that due process safeguards are not due a defendant under Rule B(1) because "Admiralty is Ancient and Admiralty is Different." Dissenting opinion of Judge Tate in *Gillespie, supra,* at pg. 1353. It is true that "A ship may be here today and gone tomorrow, not to return for an indefinite period, perhaps never. Assets of its owner ... within the jurisdiction today, may be transferred elsewhere or paid off tomorrow." *Polar, supra,* at 637. But it is also true that in this highly mobile society, goods purchased under conditional sales contracts may be here today and gone tomorrow; yet, the Supreme Court, in *Fuentes v. Shevin, supra,* has seen fit to apply due process safeguards to persons in possession of such goods. This Court is more persuaded by the dissenting opinion of Judge Byrne in *Polar,* who pointed out at pg. 645 that "... the majority has decided not to apply the procedural safeguards set forth in *North Georgia Finishing* and *Mitchell* because this is an admiralty case, without explaining how the unique characteristics of admiralty make the safeguards unreasonable." In the Rule B(1) context, this Court does not find those unique characteristics of admiralty sufficient to preclude the Defendant's right to due process safeguards.

As pointed out by Judge Byrne in *Polar, supra,* determining what process is due depends upon a balancing of the interests of the parties. Because of the danger that assets may be transferred out of the jurisdiction quickly and easily, the Court does not believe that pre-attachment notice and hearing are required by due process. In certain "extraordinary situations" seizures without notice and hearing have been upheld by the Supreme Court. The factors that constitute such "situations" are the

necessity for prompt action, an important governmental or public interest, and state control by a government agent who initiates the seizure. *Fuentes v. Shevin, supra,* 407 U.S. at pg. 91, 92 S.Ct. at pg. 1999. In *Ownbey v. Morgan,* 256 U.S. 94, 41 S.Ct. 433, 16 L.Ed. 837 (1921), the Supreme Court sanctioned an attachment of property without prior hearing because it was necessary to secure jurisdiction in a state court, an important governmental interest. This is one of the purposes of Rule B(1). However, in the absence of pre-attachment notice and hearing, prompt post-attachment notice and hearing are constitutionally required. *North Ga. Finishing, Inc. v. Di-Chem, Inc., supra; Mitchell v. W.T. Grant, supra.* The Middle District of Florida has not, by local rule, provided for a prompt post-attachment hearing. Plaintiff points to Local Rule 3.01(e), which provides: "Motions of an emergency nature may be considered and determined by the Court at any time, in its discretion" to support its argument that this Court has by local rule provided for a prompt post-attachment hearing. However, the discretionary language used in that rule persuades the Court to find that Plaintiff's argument is without merit. In *Polar, supra,* a rule promulgated by the District Court in Hawaii was in existence providing for a post-attachment hearing instanter. This rule formed a substantial basis for the *Polar* Court's upholding of the constitutionality of Rule B(1). Furthermore, although the district courts have inherent power to grant prompt post-attachment hearings, *Gillespie, supra,* at 1351, this power does not cure the facial invalidity of Rule B(1) on due process grounds.

Although this Court agrees that pre-attachment notice and hearing are not required by due process so long as a prompt post-attachment hearing is had, a post-attachment hearing does not protect against an initial wrongful attachment. In cases where hearing is not had until *after* attachment, due process requires that safeguards exist at the time of the ex parte issuance of the process of attachment. *See North Ga. Finishing Inc., supra; Mitchell v. W.T. Grant, supra.* A particularized factual showing of entitlement to attachment and evaluation of that showing by a judicial officer are minimum requirements, neither of which are provided for by Rule B(1).

It is true that Defendant may obtain the release of the attached property by posting a bond under Supplemental Admiralty Rule E(5) and this offers some protection against wrongful attachment. However, as the Court stated in *Fuentes, supra:*

When officials ... seize one piece of property from a person's possession and then agree to return it if he surrenders another, they deprive him of property whether or not he has the funds, the knowledge, and the time needed to take advantage of the recovery provision.

407 U.S. at 86, 92 S.Ct. at 1997. The availability of this method for recovery of attached property is not a sufficient safeguard to cure the lack of due process provided by Rule B(1).

In summary, the Court concludes that the unique characteristics of admiralty that preclude the application of the due process safeguards found in *Sniadach* and its progeny to Supplemental Admiralty Rule C *in rem* attachments do not preclude the application of those safeguards to Supplemental Admiralty Rule B(1) *in personam* attachments. On its face, Rule B(1) does not provide for those safeguards and is therefore violative of procedural due process under the Fifth Amendment to the United States Constitution. As stated by the Supreme Court in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977):

"[T]raditional notions of fair play and substantial justice" can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures that are inconsistent with the basic values of our constitutional heritage.

433 U.S. at 212, 97 S.Ct. at 2583.

Based on the foregoing, the amended process of maritime attachment and garnishment in this case should be quashed.