**PARCEL TANKERS, INC.**

v.

**FORMOSA PLASTICS CORPORATION.**

**No. H–81–1303.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 25, 1983.

William H. Seele, Julian & Seele, Houston, Tex., for plaintiff.

John R. Pearson, Clann & Pearson, Houston, Tex., for defendant.

## ORDER

CARL O. BUE, Jr., District Judge.

Pending before the Court is Plaintiff's Motion to Compel Arbitration and Defendant's Motion to Dismiss for Lack of Jurisdiction. The basic question presented by the motions is whether the same procedural due process that is required before a deprivation of property takes place in a non-maritime action should be required before attachment occurs in a maritime action under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.[1] The Court, having reviewed the extensive briefs and accompanying authorities that both oppose and support the motions, answers that question in the negative. Accordingly, the defendant's Motion to Dismiss is denied, and the plaintiff's Motion to Compel Arbitration is granted for the reasons stated below.

### Introduction

On May 21, 1981, plaintiff, Parcel Tankers, Inc. ("PTI"), filed a verified complaint pursuant to Rule 9(h) of the Federal Rules of Civil Procedure against Formosa Plastics

---

1. Supplemental Rule B provides in part:

Attachment and Garnishment: Special Provisions

(1) When Available; Complaint, Affidavit, and Process. With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or his attorney that, to the affiant's knowledge, or to the best of his information and belief, the defendant cannot be found within the district. When a verified complaint is supported by such an affidavit the clerk shall forthwith issue a summons and process of attachment and garnishment. . . .

(2) Notice to Defendant. No judgment by default shall be entered except upon proof, which may be by affidavit, (a) that the plaintiff or the garnishee has given notice of the action to the defendant by mailing to him a copy of the complaint, summons, and process of attachment or garnishment, using any form of mail requiring a return receipt, or (b) that the complaint, summons, and process of attachment or garnishment have been served on the defendant in a manner authorized by Rule 4(d) or (i), or (c) that the plaintiff or the garnishee has made diligent efforts to give notice of the action to the defendant and has been unable to do so.

Corporation ("FPC") for breach of contract, bunker surcharges and deadfreight. PTI further requested the issuance of a writ of attachment and garnishment pursuant to Supplemental Rule B(1) in order to effectuate *in personam* jurisdiction over FPC. The writ of attachment was issued forthwith, and FPC's property was attached.

On June 8, 1981, PTI filed a Motion to Compel Arbitration pursuant to certain contracts identified in PTI's complaint. FPC responded by filing a Motion to Dismiss for Lack of Jurisdiction and two briefs in opposition to PTI's Motion to Compel Arbitration. Quickly stated, FPC claims that the attachment of its property pursuant to Rule B is unconstitutional and violative of its right to procedural due process as established in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and its progeny.[2] *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 2080, 40 L.Ed.2d 406 (1974); *North Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Although none of these Supreme Court decisions involved maritime attachment procedures under federal admiralty law, and despite the distinct dissimilarities between attachment pursuant to Rule B and attachment involving creditors' rights under state laws,[3] their holdings have sparked spirited differences of viewpoints in the lower federal courts concerning the constitutionality of the present admiralty attachment and arrest rules. No court to which this Court is accountable has considered the constitutionality of Rule B.

*The Law*

It is axiomatic that due process is an elastic concept. *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Id.* Proponents of the constitutionality of Rule B argue that the uniqueness of maritime attachment warrants the necessity of summary seizure without an opportunity for a prior hearing. Moreover, the *Fuentes* decision, which held that the prejudgment replevin of consumer goods by creditors worked deprivations of property in derogation of due process when the debtors were neither given notice nor opportunity for an immediate hearing prior to the seizures, recognized summary seizure of property in certain factual situations.

Thus, the Court has allowed summary seizure of property to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of bank failure, and to protect the public from misbranded drugs and contaminated food. 407 U.S. 67, 91–92, 92 S.Ct. 1983, 1999–2000, 32 L.Ed.2d 556.

█ Further, due process doctrines must be considered in relation to both the geographical and commercial contexts in which they are applied. *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610, 94 S.Ct. 1895, 1901, 40 L.Ed.2d 406 (1974). Indeed, in *United States v. Villamonte-Marquez*, 462 U.S. ——, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983) and *United States v. Williams*, 617 F.2d 1063, 1087 (5th Cir.1980) (*en banc*), both the

---

2. The Supreme Court in *Sniadach* held that a wage garnishment procedure which allowed neither notice nor prior hearing to the defendant debtor violated the due process clause of the Fourteenth Amendment.

3. The Fifth Circuit Court of Appeals in *Merchants National Bank v. Dredge Gen. G.L. Gillespie*, 663 F.2d 1338 (5th Cir.1981) upheld the constitutionality of Rule C and recognized the dissimilarities between admiralty arrests and garnishment of wages:

> The problems associated with enforcement of a maritime lien by the seizure of a vessel bear little resemblance to the garnishment of wages [12] or the replevin of a consumer's store.[13] 663 F.2d at 1345.

This Court believes that that proposition holds equally true when applied to maritime attachment and maritime arrest. In addition, at least two members of the Supreme Court have realized that *Sniadach* dealt solely with wages—"a specialized type of property presenting distinct problems in our economic system." *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 614–615, 95 S.Ct. 719, 726–727, 42 L.Ed.2d 751 (1974) (Blackmun, J., with whom Rehnquist, J., joins, dissenting).

Supreme Court and Fifth Circuit, respectively, held that the substantial and long-recognized differences between the world of ships and that involving vehicles and buildings on land mandated a less restrictive standard to govern application of another constitutional principle, searches and seizures on the high seas. Admittedly, these examples involve important governmental interests ..nd are not, as in the typical Rule B attachments, purely private litigant scenarios. However, these cases undeniably support the principle that maritime attachment warrants consideration of a more flexible application of the doctrines of due process consistent with its historical function as a security device in maritime commerce.

Maritime attachment is a time-honored remedy in admiralty whose origin is anchored in the remotest history of civil and common law. *Manro v. Almeida*, 23 U.S. (10 Wheat.) 473, 6 L.Ed. 369 (1825). It serves two basic functions: first, to secure a defendant's appearance; second, to assure satisfaction of a judgment in the event the plaintiff is successful. *Swift & Co. v. Compania Colombiana*, 339 U.S. 684, 70 S.Ct. 861, 867, 94 L.Ed. 1206 (1950); *La Banca v. Ostermunchner*, 664 F.2d 65, 68 n. 4 (5th Cir.1981). Maritime attachment is available only in instances in which the defendant is not found within the district. Unlike arrest, it does not deal with specific property but instead with whatever property may be found in the district that belongs to the defendant. Rather than embark upon a protracted analytical voyage through the history of maritime attachment as many of the courts that have considered this issue have done, the Court notes that in *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne*, 605 F.2d 648 (2d Cir.1979), the Second Circuit Court of Appeals succinctly summarized both the tradition and uniqueness of attachment in an admiralty setting by stating:

> Because the perpetrators of maritime injury are likely to be peripatetic, *Ex Parte Louisville Underwriters*, 134 U.S. 488, 493, 10 S.Ct. 587 [589], 33 L.Ed. 991 (1890), and since the constitutional power of the federal courts is separately derived

in admiralty, U.S. Constitution Art. III § 2, suits under admiralty jurisdiction involve separate policies to some extent. This tradition suggests not only that jurisdiction by attachment of property should be accorded special deference in the admiralty context, but also that maritime actors must reasonably expect to be sued where their property may be found.

*Amoco Overseas Oil Co.,* 605 F.2d at 655.

Tradition and practical considerations alone have not insulated Rules B and C from attack on constitutional grounds. However, as recognized by the Court in *Schiffahartsgesellschaft Leonhardt v. A. Bottacchi,* 552 F.Supp. 771 (S.D.Ga.1982), a slight majority of the courts that have considered the constitutionality of the Rules have upheld them, citing:

> *Polar Shipping, Ltd. v. Oriental Shipping Corp.,* 680 F.2d 627 (9th Cir.1982), 1982 A.M.C. 2330 (Rule B(1); procedural due process); *Merchants National Bank v. Dredge General G.L. Gillespie,* 663 F.2d 1338 (5th Cir.1981) (Rule C; procedural due process); *Kodiak Fishing Co. v. M/V Pacific Pride,* 535 F.Supp. 915 (W.D. Wash.1982), 1982 A.M.C. 2089 (Rule C; procedural due process); *Inter-American Shipping Enterprise, Ltd. v. The Tula,* 1982 A.M.C. 951 (E.D.Va.1981) (Rules B(1) and C; procedural due process); *Anti Costi Shipping Corp. v. Golar Martins,* 1980 A.M.C. 2508 (S.D.N.Y.1979) (Rule B(1); procedural due process); *United States v. Kaiyo Maru,* 503 F.Supp. 1075 (D.Alaska 1980) (Rule C; substantive due process); *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne,* 459 F.Supp. 1242 (S.D.N.Y.1978), *aff'd* 605 F.2d 648 (2nd Cir.1979) (Rule C; substantive due process); *Grand Bahama Petroleum Co., Ltd. v. Canadian Transportation Agencies, Ltd.,* 450 F.Supp. 447 (W.D.Wash.1977) (Rule B(1); substantive due process); · *Central Soya Co. v. Cox Towing Corp.,* 417 F.Supp. 658 (N.D.Miss. 1976) (Rule C; procedural due process). *But see Cooper Shipping Co. v. Century 21 Exposition,* unpublished opinion, case no. 82–535–Civ–T–GC (M.D.Fla.1982) (Rule B(1); procedural due process);

*Alyeska Pipeline v. The Vessel Bay Ridge,* 509 F.Supp. 1115 (D.Alas.1981), 1981 A.M.C. 1086 (Rule C; procedural due process); *Cooke Industries v. Tokyo Marine Co., Ltd.,* 1978 A.M.C. 1979 (D.Alas. 1978) (Rule B(1); procedural due process); *Grand Bahama Petroleum Co., Ltd. v. Canadian Transportation Agencies, Ltd.,* 450 F.Supp. 447 (W.D.Wash.1978) (Rule B(1); procedural due process); *Karl Senner, Inc. v. M/V Acadian Valor,* 485 F.Supp. 287 (E.D.La.1980) (Rule C; procedural due process); *Engineering Equipment Co. v. S/S Selene,* 446 F.Supp. 706, 1978 A.M.C. 809 (S.D.N.Y.1978) (Rule B(1); substantive due process) (minimum contacts with U.S. as a whole sufficient). *Schiffahartsgesellschaft, supra,* at 778. In addition to the cases cited in *Schiffahartsgesellschaft,* which itself held Rule B unconstitutional on the grounds of inadequate safeguards to prevent the mistaken deprivation of property, there have been at least two other district courts that have since considered the validity of Rule B. *International Ocean Way Corp. of Monrovia v. Hyde Park Navigation, Ltd.,* 555 F.Supp. 1047 (S.D.N.Y.1983), (Rule B constitutional); *Crysen Shipping Co. v. Bona Shipping Co., Ltd.,* 553 F.Supp. 139 (M.D.Fla.1982); (Rule B unconstitutional). This Court believes that two of the above cited cases, *Polar Shipping Ltd. v. Oriental Shipping Corp.,* 680 F.2d 627 (9th Cir.1982) and *Merchants National Bank, supra,* provide ample authority to support this Court's upholding the constitutionality of Rule B.

The pioneer case holding Rule B unconstitutional is *Grand Bahama Petroleum Co., Ltd. v. Canadian Transportation Agencies,* 450 F.Supp. 447 (W.D.Wash.1978). In *Grand Bahama,* the plaintiff sued the defendant for failure to pay for fuel oil and other services rendered to defendant's chartered vessel by the plaintiff at Freeport, Grand Bahama Island. Jurisdiction was effectuated by attaching defendant's bank account located in the Western District of Washington pursuant to Rule B(1). The defendant attacked the attachment pursuant to Rule B on both procedural and substantive due process grounds. The *Grand Bahama* Court held that the inveterate independence and tradition of admiralty justified not applying the *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977),[4] decision to maritime attachment under Rule B(1). 450 F.Supp. at 455. However, despite the Court's conclusions that the autonomy of admiralty law and the tradition of maritime attachment justified exempting maritime attachment from the substantive due process considerations outlined in *Shaffer,* the Court rejected the argument that the historical justification of attachment insulated it from attack on procedural due process grounds. After analyzing the *Sniadach* line of cases and their application to maritime attachment, the Court declared Rule B unconstitutional on procedural due process grounds because it does not afford protection from the mistaken deprivation of property. 450 F.Supp. at 459. However, the weight and vitality of the *Grand Bahama* decision have been seriously cast into question in the wake of the Ninth Circuit Court of Appeals' decision in *Polar Shipping Ltd. v. Oriental Shipping Corp., supra.*[5]

The Ninth Circuit became the first appellate court to uphold the constitutionality of Supplemental Rule B on procedural due process grounds in *Polar Shipping Ltd.* The Court engaged in a four part analysis of Rule B in arriving at its decision. First,

**4.** *Shaffer* held that a state court could not exercise jurisdiction over a defendant's property under circumstances in which a court would not have *in personam* jurisdiction under *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny.

**5.** The Court notes that the same would apparently hold true for *Cooke Industries v. Tokyo Marine Co., Ltd.,* 1978 A.M.C. 1979 (D.Alaska 1978). Additionally, the Court observes that the *Grand Bahama* Court itself has since upheld, on non-constitutional grounds, an attachment pursuant to Rule B. *Cobelfret-Cie Belge v. Samick Lines Co. Ltd.,* 542 F.Supp. 29 (W.D. Wash.1982). Finally, the *Grand Bahama* Court has since upheld the constitutionality of Rule C, relying heavily upon *Merchants National Bank. Kodiak Fishing Co. v. M/V Pacific Pride,* 535 F.Supp. 915 (W.D.Wash.).

the court noted that "the fact that the Supreme Court promulgated the rules as formulated and recommended by the Advisory Committee does not foreclose consideration of their validity, meaning or consistency." *Polar Shipping Ltd., supra,* at 635 (quoting *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946)). It was further concluded that the court had both the authority and duty to consider constitutional challenges to Supplemental Rule B. *Id.*

Turning to the heart of the issue, the Court then discussed the special nature of admiralty proceedings, quoting extensively from the Fifth Circuit's decision in *Merchant's National Bank:*

> In a case in which Supplemental Rule C, dealing with actions *in rem* in admiralty, was attacked as unconstitutional on grounds similar to those asserted before us, *Merchants Nat. Bank v. Dredge Gen. G.L. Gillespie,* 5 Cir., Unit A, 1981, 663 F.2d 1338, at 1343, Judge John R. Brown said:
>
>> For a practice promulgated initially by Federal Courts, and applied and enforced by Federal Courts for well over a century, the words of Mr. Justice Holmes, in *Jackman v. Rosenbaum Co.,* 260 U.S. 22, 31, 43 S.Ct. 9, 10, 67 L.Ed. 107, 112 (1922), are timely:
>>
>>> The 14th Amendment, itself a historical product, did not destroy history for the states, and substitute mechanical compartments of law, all exactly alike. If [a] thing has been practiced for 200 years by common consent, it will need a strong case for the 14th Amendment to affect it....
>
> What he said of the Fourteenth Amendment applies equally to the present controversy over the due process requirements of the Fifth Amendment. We deal here not with a merely historical abstraction that should be preserved on the basis of its past utility, but with a practical, problem-solving device that retains its importance in contemporary admiralty law.

*Polar Shipping, supra,* at 637. The Court noted that Judge Brown expressly limited his decision to Rule C but correctly reasoned that the principle announced by Judge Brown applies equally to an analysis of Rule B.[6] *Id.*

Third, the Court analyzed the *Sniadach* line of cases and concluded that pre-attachment notice and hearing would defeat both of the stated purposes of maritime attachment if so imposed. *Polar Shipping Ltd., supra,* at 639. The Court recognized also that even the *Fuentes* Court would honor summary attachments of property to secure jurisdiction in state court—"clearly a most basic and important public interest." *Polar Shipping, Ltd., supra,* at 640, (quoting *Fuentes v. Shevin, supra,* 407 U.S. at 91, n. 23, 92 S.Ct. at 1999, n. 23). Finally, the Court cited two of the *Sniadach* tetralogy, *North Ga. Finishing, Inc. v. Di-Chem, Inc.,* and *Mitchell v. W.T. Grant Co.,* for the proposition that where no pre-attachment notice and hearing are afforded, an immediate and adequate post-attachment hearing is constitutionally mandated. *Polar Shipping, Ltd.,* 680 F.2d at 640. The Court then observed that while Supplemental Rule B does not expressly provide for a post-attachment hearing that could result in vacating an attachment, the district courts do have the power to make local rules consistent with the Supplemental Rules. Following this rationale, the Court concluded that the Local Rules for the District of Hawaii provided for a prompt post-attachment hearing, which, when coupled with an opportunity to obtain release of the property by posting a bond pursuant to Supplemental Rule E(5), satisfied adequately the constitutionally required post-attachment pro-

---

**6.** Some courts addressing the procedural due process issue have stressed the distinction between Admiralty Rules B and C on the grounds that B is an *in personam* action and C is an *in rem* action irrevocably linked to a maritime lien. These characteristics are substantive in nature and not procedural and have no rele-vance to either of the rules promulgated by the Supreme Court. Insofar as the quality or quantity of procedural due process to be afforded a litigant under Rule B as opposed to Rule C, there can be little, if any, difference. *See Amstar Corporation v. S.S. Alexandros T.,* 664 F.2d 904, 908–909 (4th Cir.1981).

cedural safeguards. *Polar Shipping, Ltd., supra,* at 641.

This Court is of the opinion that the decisions in *Polar Shipping, Ltd.* and *Merchants National Bank* justify this Court's upholding the constitutionality of Supplemental Rule B.[7] Further, the fact that both *Polar Shipping Ltd.* and the most recent decision upholding the constitutionality of Rule B, *International Ocean Way, supra,* both involved districts that, unlike this district,[8] had Local Rules expressly providing for a prompt post-attachment hearing does not alter this Court's course. This Court's inherent equitable powers furnish ample authority to entertain motions such as those specifically authorized by the Local Rules found in *Polar Shipping, Ltd., supra,* and *International Ocean Way, supra.* The Court in *Merchants National Bank* recognized a district court's authority to entertain such motions even without an express local rule when it stated: "And for districts which may not have formally prescribed to the equivalent of W.D.La. Rule 21, we have no doubt that every Admiralty Court has the inherent power to assure the protections contemplated." *Merchants National Bank, supra* at 1344.[9] Therefore, it is unavailing for FPC to argue that the Local Rules of the Southern District of Texas are necessarily deficient because there is no opportunity for a prompt hearing to contest the attachment. This is particularly so in view of the fact that FPC never moved this Court for such a hearing.

In reaching this decision, the Court realizes that the issue of constitutionality of the Supplemental Rules merits extensive appellate review; its resolution is that important to the maritime commerce of this country and the world. Many extremely able judges have labored at length on both sides of the issue to advance their respective viewpoints, and it would serve no useful purpose for this Court to reiterate extensive arguments in legal areas previously minutely dissected by other jurists. As has been stated heretofore, most if not all legal questions have been crystallized and answered to this Court's satisfaction in *Polar Shipping, Ltd.* and *Merchants National Bank, supra.* This is so because the law of admiralty applies to a far different world from that subject to the common law. The former is in reality a body of international commercial law, whereas the latter as employed in *Sniadach* and its progeny relate to individual consumer and creditor problems and state attachment and garnishment procedures. When the dissenting judge in *Merchants National Bank* observed that the majority's main argument was that "Admiralty is Ancient and Admiralty is Different," he focused on a critical distinguishing cornerstone of this issue. It would be unfortunate, indeed, if for the sake of theoretical uniformity standardized concepts of procedural due process were compelled to be followed in and superimposed on all cases including admiralty. Finally, it is difficult to believe that the Supreme Court in promulgating pursuant to statute a procedural rule such as Rule B which has worked so well for so many years, has totally lost sight of the appropriate measure of due process in a maritime context, particularly when its pronouncements alone formulate

---

**7.** This Court is cognizant of the other district courts that have given the *Polar* decision a cool reception. *Schiffahartsgesellschaft, supra; Crysen Shipping Co., supra; Cooper Shipping v. Century 21 Exposition,* 82–535–Civ–T–GL (Middle District of Fla., Tampa Division) (declaring Rule B unconstitutional on due process grounds and denying motion to reconsider in light of *Polar* ).

**8.** The Southern District of Texas formally adopted such a local rule on May 25, 1983, which provides:

 21. Hearings on Admiralty Rule B Matters. In case of the attachment of property in causes of admiralty jurisdiction, any person having a right to intervene in respect to the thing attached, may upon evidence showing any improper practices or want of equity on the part of the plaintiff, have a mandate from the judge for the plaintiff to show cause instanter why the attachment should not be vacated.

**9.** Consistent with this proposition, this Court acting in its traditional role as an admiralty court of equity has always been available to all parties and interests to resolve on short notice by appropriate proceedings any and all issues which may arise as a consequence of a Rule B seizure. The local rule underscores this time honored practice in the maritime law.

**1466**

the parameters of that constitutional principle. Consequently, the defendant's Motion to Dismiss is denied.

### Motion to Compel Arbitration

 PTI premises the Motion to Compel Arbitration and stay the proceeding on clause sixteen of the charter party between PTI and FPC. Clause sixteen provides as follows:

> 16. Arbitration Clause: Any dispute or difference arising out of or relating to this Contract or the breach thereof, shall be finally settled by arbitration in accordance with the rules of conciliation and arbitration of the International Chamber of Commerce and judgment upon the award rendered may be entered into the court having jurisdiction or in accordance with such other rules of procedure as Charterer and Owner shall subsequently mutually agree. Any arbitration proceeding shall be conducted in London. English law to apply. Each party to appoint one arbitrator, those two so appointed to agree on the appointment of a third arbitrator. Failure to agree by the two arbitrators to such third arbitrator the appointment of same (third arbitrator) to be made by the International Chamber of Commerce.

Charter Party, Cl. No. 16. The Court's authority to grant a stay pending arbitration arises out of Section 3 of the United States Arbitration Act, 9 U.S.C. § 3 (1970).[10] The Act has been characterized as "reversing centuries of judicial hostility to arbitration agreements...." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 510, 94 S.Ct. 2449, 2452, 41 L.Ed.2d 270 (1974). Its purpose is to allow parties to a contract to select a less costly alternative to litigation, and then to proceed in that alternate forum without delay imposed in the courts. *See Scherk v. Alberto-Culver Co., supra* at 510–

11, 94 S.Ct. at 2452–53; *Prima Paint Corp. v. Flood & Conklin,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). In addition, the intent of Congress in passing the Act was to elevate arbitration agreements to the same status as other contracts. *See Scherk v. Alberto-Culver Co., supra* 417 U.S. at 511, 94 S.Ct. at 2453. The Court's task in resolving a Section 3 motion to stay pending arbitration has been well defined to conform to congressional purpose in passing the Act: inquiry is limited to "issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin, supra* 388 U.S. at 404, 87 S.Ct. at 1806.

FPC opposes the motion to compel arbitration on three grounds. First, FPC contends that motions to compel arbitration brought pursuant to the Arbitration Act must allege an independent ground of jurisdiction and that plaintiff has no independent grounds for jurisdiction other than its improper seizure of FPC's property. However, finding Rule B to be constitutionally sound and finding further that jurisdiction over the defendant is proper, the Court summarily rejects that contention. Second, FPC contends that PTI has waived its right to arbitrate by taking action inconsistent with a desire to pursue arbitration. Third, FPC avers that PTI's motion is premature as it has failed to follow the procedures established for the invocation of arbitration. It is these issues that the Court now collectively considers.

 "The right to arbitration, like any other contract right, can be waived." *Cornell & Company v. Barber & Ross Company,* 360 F.2d 512, 513 (D.C.Cir.1966) (footnote omitted). Once a party has waived the right to arbitrate, that party may be said to come within the constraints of Section 3 which provides that the Court may grant an

10. § 3. *Stay of proceedings where issue therein referable to arbitration*
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such

suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

application for a stay "providing the applicant ... is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (1970). Waiver has been found in circumstances where the applicant has actively participated in a lawsuit or has taken other action inconsistent with the right to refer a dispute to arbitration. *See, e.g., Cornell & Company v. Barber & Ross Company, supra,* at 513; *American Sugar Refining Co. v. The Anaconda,* 138 F.2d 765, 767 (5th Cir. 1943); *Radiator Specialty Co. v. Cannon Mills,* 97 F.2d 318, 319 (4th Cir.1938). Actions constituting waiver may include, *inter alia,* the applicant's engaging in some combination of filing an answer, setting up a counterclaim, pursuing discovery, and moving for continuance prior to moving for a stay pending arbitration. *See, e.g., Cornell & Company v. Barber & Ross Company, supra; Radiator Specialty Co. v. Cannon Mills, supra.* One purpose of the United States Arbitration Act was to "facilitate the settlement of dispute and avoid the delay caused by litigation," *Radiator Specialty Co. v. Cannon Mills, supra,* at 319; therefore, a party may be found in default pursuant to Section 3 of the Act if the claimed right to arbitration would result in furthering delays, *see Radiator Specialty Co. v. Cannon Mills, supra.*

Although the right to arbitration may be waived, in light of the strong federal policy favoring arbitration, *see Wick v. Atlantic Marine, Inc.,* 605 F.2d 166 (5th Cir.1979), some courts have found that activity inconsistent with the right to arbitration, without more, is insufficient to constitute waiver. *See Demsey & Associates v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2nd Cir.1972); *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968). The additional element required is that of resultant prejudice to a party. *See Demsey & Associates v. S.S. Sea Star, supra,* at 1018; *Carcich v. Rederi A/B Nordie, supra,* at 696; *International Minerals & Chemical Corporation v. M/V Achilleus,* 1971 A.M.C. 1161, 1163 (S.D.N.Y.1971). "Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration." *Carcich v. Rederi A/B Nordie, supra,*

at 696 n. 7, *citing Kulukundis Shipping Co. v. Amtorg Trading Corporation,* 126 F.2d 978, 898 n. 40 (2d Cir.1942) and *Graig Shipping Co. v. Midland Overseas Shipping Corporation,* 259 F.Supp. 929 (S.D.N.Y.1966).

 PTI has not delayed in moving for a stay pending arbitration, nor has prejudice resulted to any party. PTI filed its motion to compel arbitration approximately nineteen (19) days after the complaint was filed. Consistent with the principle that waiver is not to be inferred lightly, *Carcich v. Rederi A/B Nordie, supra,* at 696, the Court finds that PTI has not waived its right to refer the dispute to arbitration. Further, the Court finds that PTI is not in default pursuant to Section 3 of the United States Arbitration Act and PTI has not acted prematurely. Consequently, PTI's motion to compel arbitration is granted.